THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM WALLACE, Defendant-Appellant.

Second District   No. 2—86—1050

Opinion filed May 26, 1988.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, William Wallace, was convicted of aggravated criminal sexual assault and sentenced to a 20-year term of imprisonment in the Department of Corrections. This court initially affirmed his conviction but remanded for resentencing. (*People v. Wallace* (1986), 145 Ill. App. 3d 247 (hereafter referred to as *Wallace* I).) On remand, defendant's sentence was reduced to a term of 12 years. Once again, defendant appeals his sentence, arguing that the trial court erred in considering a victim impact statement when the victim was not present at

the sentencing hearing and that the 12-year sentence is excessive. For the reasons set forth below, we affirm.

As set forth in *Wallace* I, the victim was sunbathing in her backyard when defendant drove by in a pickup truck. Defendant stopped, asked the victim for directions to another street, and left. Defendant returned and asked the victim if he could use her phone, but she refused, saying there was a phone at a nearby store. Defendant asked to use a phone book, and the victim again declined. Defendant turned to leave, and the victim went to the side door of her house. When she opened the door, defendant grabbed the door and entered the house behind her.

The victim testified that defendant forced her to the floor and forcibly had sexual intercourse with her. Evidence was introduced of bruises on the victim's back and arm caused by defendant's attack. Defendant's defense was that he did not penetrate the victim and that she had implicitly consented to his advances.

At defendant's first sentencing hearing, evidence of two other incidents was introduced. The day before the commission of the offense at bar, a woman was in the garage of her boyfriend's Gurnee home cleaning out his car. Defendant approached the garage and asked the woman for directions, but she told him she was unfamiliar with the area. Defendant asked to use the phone, the woman refused, and defendant left. The woman was in the house about 30 minutes later when the doorbell began ringing. She looked out and saw defendant. The woman called the police, and the ringing stopped. A short time later, a Gurnee police officer stopped defendant, who said he was looking for a particular address and had stopped to ask directions. Defendant said he had stayed at the door because he could tell someone was home, but he left when no one would answer the door.

Evidence was also introduced of another incident in South Carolina, where defendant had previously been stationed in the Navy. Apparently, a marine pilot's wife had been raped by a man who approached her house, asked for a boost for his car, followed her into her house, and assaulted her. It was reported that the pilot's wife picked defendant's picture from a photo lineup, but this information came to the sentencing court in the form of triple hearsay testimony.

In *Wallace* I, this court held that due to the proximity in time to and similarity between the offense at bar and the Gurnee incident, it was permissible for the trial court to infer that defendant would have sexually assaulted the woman there if he had been able to enter the house with her. (*Wallace* I, 145 Ill. App. 3d at 254.) This court did find, however, that consideration of the South Carolina incident was

erroneous because of the questionable reliability of the evidence. (*Wallace* I, 145 Ill. App. 3d at 255.) Since we could not be certain that the 20-year sentence was not affected by consideration of the South Carolina charge, the cause was remanded for resentencing. *Wallace* I, 145 Ill. App. 3d at 256.

At defendant's second sentencing hearing, the State requested the trial court to take notice of the evidence adduced at the first hearing except for the South Carolina matter, and the trial court indicated it would do so. The State's only other evidence in aggravation was in the form of a letter written by the victim here in which she recounted her fear of the defendant and the continued devastating effect the assault had had on her life. Although the victim was not present when the prosecutor read the letter into the record, the State represented that the victim was in the courthouse and was available to be interviewed by defense counsel. This opportunity was declined, and defendant's objections to the introduction of the letter were overruled.

Over the State's objection, defendant submitted in mitigation a sentencing memorandum and accompanying exhibits. The exhibits included reports of two polygraph examinations; defendant's high school and junior college records; military records, including a letter of commendation; records from the Department of Corrections; and a letter from Leon Folkers, a volunteer chaplain in the Pontiac Correctional Center. Testimony was also presented by defendant's wife and his father, who both traveled to the hearing from Ohio. Mrs. Wallace testified that she and defendant had been married almost six years and had a two-year-old son. She also had three other sons whom defendant was adopting at the time of his arrest. She testified that defendant contributed to the family's support by working at prison jobs. She said she loved her husband and would stand by him. As noted above, the trial court reduced defendant's sentence to a term of 12 years' imprisonment.

We first consider whether the trial court erred in allowing the prosecutor to read the victim's letter into evidence when the victim was not present in the courtroom. Defendant contends that the plain language of the Bill of Rights for Victims and Witnesses of Violent Crime Act (Victims' Bill of Rights) (Ill. Rev. Stat. 1985, ch. 38, par. 1401 *et seq.*) requires the victim to be present before her impact statement can be considered. He argues that the victim's presence would ensure the reliability of her statement and that her absence denied him his constitutional right to confront his accuser. Citing *People v. Rainey* (1986), 149 Ill. App. 3d 327, defendant concludes that the admission of the victim's letter necessitates a new sentencing hearing.

■ We first note that a trial court is not bound by a rigid adherence to the usual rules of evidence at a sentencing hearing but may search anywhere within reasonable bounds for facts which tend to aggravate or mitigate an offense. (*People v. Meeks* (1980), 81 Ill. 2d 524, 535.) The trial court's inquiry is limited only by the prerequisite that the information be considered accurate and reliable. (*Meeks*, 81 Ill. 2d at 535; *People v. Crews* (1967), 38 Ill. 2d 331, 337.) Contrary to defendant's assertion, we do not believe that the victim's presence was necessary to ensure the reliability of the contents of her letter. Defendant cites no authority for this requirement, and we are unable to say that because the victim could not bring herself to once again face her attacker, the descriptions of her emotional trauma are so unreliable as to preclude their consideration.

■ We also note that defendant has not cited any authority for his second policy argument that the procedure employed here denied him his constitutional right of confrontation. Failure to support an argument with citation of authority results in waiver of that argument. (113 Ill. 2d Rules 341(e)(7), (f).) Moreover, even if defendant had not waived this issue, it is well settled that a defendant already adjudged guilty does not have the right to cross-examine all out-of-court sources relied on in sentencing, even in a capital case. (*People v. Jones* (1982), 94 Ill. 2d 275, 286-87, citing *Williams v. New York* (1949), 337 U.S. 241, 250-51, 93 L. Ed. 1337, 1343-44, 69 S. Ct. 1079, 1085.) Thus, the policy considerations relied on by defendant do not require the victim's presence before the crime's impact can be considered.

■ Nor does the Victims' Bill of Rights preclude consideration of the letter in question. Section 6 of the Victims' Bill of Rights provides as follows:

"In any case where a defendant has been convicted of a violent crime ***, except those in which both parties have agreed to the imposition of a specific sentence, and a victim of the violent crime is present in the courtroom at the time of the sentencing or the disposition hearing, the victim upon his or her request shall have the right to address the court regarding the impact which the defendant's criminal conduct *** has had upon the victim. If the victim chooses to exercise this right, the impact statement must have been prepared in writing in conjunction with the Office of the State's Attorney prior to the initial hearing or sentencing, before it can be presented orally at the sentencing hearing. The court shall consider any statements made by the victim, along with all other appropriate factors in

determining the sentence of the defendant ***. (Ill. Rev. Stat. 1985, ch. 38, par. 1406.)

Although defendant reads this statute as specifically requiring a victim's presence in court before a sentencing court can consider a victim impact statement, we do not believe that such was the intention of the legislature. Even before the Victims' Bill of Rights became law, it had already been held that a similar letter could properly be considered because, as noted above, hearsay evidence can be considered at sentencing and, more importantly, because Illinois law *requires* consideration of a crime's impact on the victim. (*People v. Bachman* (1981), 92 Ill. App. 3d 419, 424-25; see Ill. Rev. Stat. 1985, ch. 38, par. 1005—3—2(a)(3).) Under defendant's interpretation, the legislature thus would have intended by adoption of the Victims' Bill of Rights to make it more difficult for a victim's statement to be considered than was already possible. The real purpose of the Victims' Bill of Rights, however, "is to ensure the fair and compassionate treatment of victims and witnesses of violent crime and to increase the effectiveness of the criminal justice system by affording certain basic rights and considerations to the victims and witnesses of violent crime who are essential to prosecution." (Ill. Rev. Stat. 1985, ch. 38, par. 1402.) Clearly, the legislature did not intend to make sentencing more burdensome on those who have already suffered the traumatic effects of violent crime. In keeping with the name and purpose of the statute, we conclude that section 6 of the Victims' Bill of Rights merely sets forth the absolute right of a victim to present an oral impact statement at sentencing if she so desires. It does not impose a new requirement that a victim be present before a sentencing court can consider the impact on her as presented in the form of a written statement. We find defendant's reliance on *Rainey* misplaced, as in that case it was held error to allow a victim's mother to prepare the impact statement and to testify at the sentencing hearing. (*Rainey*, 149 Ill. App. 3d at 331.) In this case, it was the victim herself who wrote of the crime's impact on her.

We turn next to defendant's argument that the 12-year sentence is excessive. Defendant contends that, in imposing a sentence six years longer than the minimum required for aggravated criminal sexual assault, the trial court overlooked his rehabilitative potential. Defendant points to the "unaggravated manner" in which the offense was committed, as well as to his record of achievements both before and after his conviction, his performance in the Navy, and the continued support of his family and friends.

It is true that all penalties must be determined both according to

the seriousness of the offense and with the objective of restoring the offender to useful citizenship. (Ill. Const. 1970, art. I, §11; *People v. Branham* (1985), 137 Ill. App. 3d 896, 902.) It is equally true, however, that the prime responsibility for striking the proper balance between these two factors rests with the trial court. (*People v. Crosser* (1983), 117 Ill. App. 3d 24, 32.) The trial court is ordinarily in the best position to make a reasoned judgment as to a sentence which balances the need to protect society and rehabilitate the offender, and its judgment is due great weight and deference. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) As such, a reviewing court will reduce a sentence only where it constitutes a substantial departure from the fundamental spirit and purpose of the law and is an abuse of discretion. *People v. Cox* (1980), 82 Ill. 2d 268, 275; *Perruquet*, 68 Ill. 2d at 153.

■■ ■ From our review of the record, it is clear that the trial court gave serious consideration to both the seriousness of the offense and defendant's potential for rehabilitation. The court specifically stated it considered defendant's good conduct since incarceration. Nevertheless, the trial court's consideration of defendant's rehabilitative potential need not outweigh the seriousness of the offense or other aggravating factors. (*People v. Brajcki* (1986), 150 Ill. App. 3d 506, 515.) The trial court considered that not only did defendant attack the victim in her own home, causing lasting psychological effects, but also that defendant apparently attempted a similar assault the day before the crime at bar. Although defendant finds the latter consideration insignificant, this court has already held that the trial court could permissibly infer that defendant would have assaulted the Gurnee woman if he had been able to gain entry to her boyfriend's home. (*Wallace*, 145 Ill. App. 3d at 254.) We also note that when defendant exercised his right of allocution, he expressed no remorse or concern for the victim. The trial court was of the opinion that defendant's explanation of the incident was outlandish, and such a perception of untruthfulness is a proper consideration in the court's appraisal of defendant's character and prospects for rehabilitation. *People v. Ward* (1986), 113 Ill. 2d 516, 528.

We have examined the cases which defendant argues require a reduction in sentence (see *People v. Treadway* (1985), 138 Ill. App. 3d 899; *People v. Gibbs* (1977), 49 Ill. App. 3d 644), but we do not find them controlling. While the sentences in those cases were reduced because of the defendants' rehabilitative potential (*Treadway*, 138 Ill. App. 3d at 905; *Gibbs*, 49 Ill. App. 3d at 649), the original sentences there were much longer than defendant's, and even when reduced,

were significantly greater than the sentence here. A reviewing court will not substitute its judgment as to sentencing solely because it might have balanced the sentencing factors differently or imposed a different sentence if the task of sentencing had been delegated to it. (*People v. Cox* (1980), 82 Ill. 2d 268, 280.) Under the facts of this case, we find no abuse of discretion in defendant's 12-year sentence for aggravated criminal sexual assault.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

UNVERZAGT and HOPF, JJ., concur.