THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN R. BRINK, Defendant-Appellant.

Fourth District   No. 4—87—0790

Opinion filed September 22, 1988.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas K. Leeper, State's Attorney, of Quincy (Kenneth R. Boyle, Robert J. Biderman, and J. A. C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Following a jury trial in the circuit court of Adams County, defendant John Brink was convicted of theft in excess of $300 in violation of section 16—1(d)(1) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 16—1(d)(1)) and sentenced to five years' imprisonment. Defendant appeals, contending the trial court erred in denying his pretrial motion to suppress evidence. We are asked to decide whether the evidence on which defendant's conviction was based was improperly seized under the plain-view exception to the warrant requirement.

The facts are generally undisputed. On July 7, 1987, the grand jury returned an indictment charging defendant with theft in excess of $300. Additional counts charging theft under $300 (Ill. Rev. Stat. 1987, ch. 38, par. 16—1(d)(1)), violation of bail bond (Ill. Rev. Stat. 1987, ch. 38, par. 32—10), and attempt (escape) (Ill. Rev. Stat. 1987, ch. 38, par. 8—4(a)) were subsequently dismissed. Defendant was again charged with theft and bail bond violation by information filed

October 9, 1987, due to a defect in the original indictment. Only the theft count is involved in this appeal.

On September 1, 1987, defendant filed a motion to suppress evidence, claiming the items seized following his arrest were seized without a warrant in circumstances which did not fall within any exceptions to the warrant requirement.

The sole witness at the September 25, 1987, suppression hearing was Trooper David Dodson of the Illinois State Police. He testified that between noon and 1 p.m. on Sunday, April 19, 1987, he and Sergeant Michael Ernst were at the Kenny Jansen residence in Liberty, Illinois, conducting an interview unrelated to the case at bar. Dodson observed a U-Haul van pull up to the Bill Brink residence across the road. He stated he was standing about 200 to 300 yards from the van. A man exited the vehicle, opened up the back doors of the van, and made two trips to the back door of the house, first carrying a white object and then a dark box.

Dodson told Ernst he thought the person looked like John Brink, and he thought the Adams County sheriff had issued a warrant for his arrest. Ernst stated he knew there was a warrant out for defendant's arrest. Neither officer radioed for verification.

The plainclothes officers proceeded in their unmarked squad car to the Brink residence and pulled up behind the van. At that point, defendant stood near the back door of the residence, about 20 feet from the van. Defendant and Dodson walked toward each other. Dodson stated to defendant he thought defendant's name was John Brink and there was a warrant out for his arrest. Defendant stated his name was Don Johnson, and he did not know what Dodson was talking about. Dodson asked for identification. Defendant handed him a Texas driver's license in the name of Gary Wayne Miller and showing a photograph of defendant. Unconvinced, Dodson repeated his belief defendant was John Brink, who was wanted in Adams County. He then arrested defendant. When Sergeant Ernst went to the squad car to obtain handcuffs, defendant ran toward the road. He did not return to the van. The officers apprehended him about 100 yards from the van.

Once defendant was handcuffed and seated beneath a tree near the house, the officers looked into the van without obtaining defendant's permission. Dodson stated at least one of the two doors in the back of the vehicle was open, and there were no windows in the rear. Sergeant Ernst asked defendant where he obtained the items in the back of the van. Defendant stated he bought them from someone at a truck stop. Dodson stated *Miranda* warnings had not been given at

that point because defendant was not arrested for possessing the items in the truck, but for the outstanding warrant.

After a backup squad car arrived and defendant was seated inside, Dodson and Ernst looked at the items in the truck. They observed a brand new barbecue grill in a box with a price tag on it, some propane tanks, and other items used for grilling. The items could readily be seen from outside the van, which had a 13-foot bed and very few items in it. When Dodson was asked whether he knew the items were stolen, he said, "No. We had no idea if they were stolen or not."

The officers made a rough inventory of the items in the truck. Ernst took a label off one of the boxes. At that point they suspected the items were stolen. The officers also returned to the van the two items they had seen defendant carry to the back of the house, a white propane tank, and the dark box containing a barbecue grill. They closed the van doors, and told defendant's brother, who had then arrived, they thought the items were stolen and they were going to check on it. They instructed defendant's brother not to bother the vehicle, which they left on the premises with the cab locked and the back doors unlocked. The next day, April 20, when they learned the items in the truck had been stolen from the Skelgas store in St. Peters, Missouri, officers returned and seized the truck and its contents without a warrant.

On cross-examination, Dodson stated he had never seen defendant, but recognized him from his description—tall, slender, and wore cowboy outfits. Although Dodson did not know the specific crime for which defendant was wanted, he said he "gathered" defendant was a thief. The officers did not mark on any of the items in the van, but wrote down serial numbers and descriptive information. After they learned of the Skelgas burglary, officers were furnished with a list of items taken. They compared those items to their own notes, and subsequently made out an evidence inventory sheet.

In denying the motion to suppress, the court stated:

> "The Court is going to deny the motion, and I don't see anything wrong with this seizure. They saw the articles on one day, and it was out in the rural area. They came into Quincy, and they made their investigation, and they went right back out and seized the property. It was in plain view. They knew it was there. They identified it. They took serial numbers off of it. I feel it was a good search. I am going to deny the motion to suppress."

On October 13, 1987, defendant was convicted on the basis of the

seized items, plus testimony from Trooper Dodson and the manager of the Skelgas store, who identified photographs of the recovered equipment as matching the items taken in the burglary. Sergeant Ernst testified that during the initial inventory on April 19, he found a label on one of the boxes which contained the name and address of the Skelgas Store in St. Peters, Missouri. He called the store and learned it had been recently burglarized. The description of some of the stolen items matched that of the equipment found in defendant's vehicle. The only conflict in the evidence concerned whether officers found two price tags taped to boxes in the van, or whether they were found on the floor of the van. The tags were removed by Ernst April 19 but kept in Dodson's possession. The defense rested without presenting any evidence. Defendant was found guilty and this appeal followed.

Defendant argues the trial court erroneously applied the plain-view exception because police had no probable cause to believe the contents of the van were stolen at the time of defendant's arrest. The State contends police properly seized the evidence under the plain-view doctrine. We agree with defendant.

■■ The burden of proof is on defendant to establish, on a motion to suppress, that a search and seizure were unreasonable. (*People v. Neal* (1985), 109 Ill. 2d 216, 486 N.E.2d 898; Ill. Rev. Stat. 1987, ch. 38, par. 114—12(b).) A reviewing court will not disturb a trial court's determination on a motion to suppress unless it is manifestly erroneous. *Neal*, 109 Ill. 2d at 218, 486 N.E.2d at 899.

■■ It is a fundamental premise of both State and Federal law that in the absence of exigent circumstances or some other exception to the warrant requirement, no evidence to be used in a criminal prosecution may be sought or seized without a lawful warrant. (*Frank v. Maryland* (1959), 359 U.S. 360, 365, 3 L. Ed. 2d 877, 881, 79 S. Ct. 804, 808; *People v. Madison* (1988), 121 Ill. 2d 195, 201, 520 N.E.2d 374, 377.) Under the plain-view doctrine, evidence seized by officers in the absence of a warrant is nevertheless admissible if three conditions are met. First, police must be properly on the premises through a warrant or an exception to the warrant requirement. Second, the police must discover the evidence inadvertently, not knowing in advance the location of the evidence. Finally, it must be immediately apparent that the item observed may be evidence of a crime, contraband, or otherwise subject to seizure. (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 464-71, 29 L. Ed. 2d 564, 582-86, 91 S. Ct. 2022, 2037-41; *Madison*, 121 Ill. 2d at 208, 520 N.E.2d at 380-81.) Here, defendant has conceded officers were lawfully on the premises at the time of defendant's arrest on April 19, 1987.

The Supreme Court added the requirement of probable cause to the plain-view doctrine in *Arizona v. Hicks* (1987), 480 U.S. 321, 94 L. Ed. 2d 347, 107 S. Ct. 1149. In *Hicks*, a man was wounded when struck by a bullet fired through the floor of the apartment above him. Police entered the upstairs apartment to search for the gunman, other victims, and weapons. Police found guns and a mask. They also found expensive stereo components in the otherwise squalid apartment. An officer recorded serial numbers off some of the components without moving them. However, he had to turn over a turntable in order to record its serial number. He phoned the turntable's serial number into police headquarters, which reported the item stolen. The officer immediately seized the turntable. A warrant was obtained for the seizure of the other components when it was learned they had been taken in the same armed robbery.

The trial court granted defendant's motion to suppress the seized evidence. The Arizona Court of Appeals affirmed, the Arizona Supreme Court denied review, and appeal was taken to the Supreme Court. The Court initially ruled that while the search of the apartment was in progress, simply inspecting the stereo equipment and recording serial numbers did not constitute a seizure, because no additional invasion of defendant's privacy interest was implicated. However, picking up the turntable and turning it over to find its serial number constituted a search unsupported by the exigent circumstances which justified the intrusion into the apartment. The State conceded below the officer had no probable cause to believe the stereo equipment was stolen.

In ruling probable cause is necessary to invoke the plain-view doctrine, the Court stated:

> "To say otherwise would be to cut the 'plain view' doctrine loose from its theoretical and practical moorings. The theory of that doctrine consists of extending to nonpublic places such as the home, where searches and seizures without a warrant are presumptively unreasonable, the police's longstanding authority to make warrantless seizures in public places of such objects as weapons and contraband. See *Payton v. New York, supra,* at 586-87, 63 L. Ed. 2d 639, 100 S. Ct. at 1371. And the practical justification for that extension is the desirability of sparing police, whose viewing of the object in the course of a lawful search is as legitimate as it would have been in a public place, the inconvenience and the risk—to themselves or to preservation of the evidence—of going to obtain a warrant." *Hicks,* 480 U.S. at 326-27, 94 L. Ed. 2d at 355, 107 S. Ct. at 1153.

*People v. Singer* (1987), 156 Ill. App. 3d 470, 509 N.E.2d 758, applied the *Hicks* rationale in the context of a warrantless dormitory room search. Following a series of burglaries, two officers were allowed into a dormitory room to talk to the brother of a man arrested in connection with the burglaries. Fearing the occupants of a room down the hall would be "tipped off" and the merchandise would never be recovered, the two officers went to the room and were given permission to enter. They sought a video poker game, a dart board, a coin box, and a popcorn container. After stating the purpose of their visit and after advising the room's occupants of their constitutional rights, one of the detectives observed a dart board under one of the beds. He asked for permission to search the room, which was denied by one of the men. After that person was taken out of the room by the second detective, the officer went over to the bed, bent over and looked down. He touched the dart game and removed a sleeveless shirt on top of what he recognized as a video poker game. He moved the machine out a little so the other occupant of the room could see it. The officer then questioned the remaining occupant about the burglary. Both occupants were subsequently arrested. The poker machine was determined to have been taken from the premises of one of the businesses which had been burglarized.

The defendants' motion to suppress the evidence was granted by the trial court. Although the trial court found the officers were lawfully in the room and the poker game was in plain view, the seizure was ruled invalid since no warrant had been obtained and no exigent circumstances existed. On review, the court, relying on *Hicks*, concluded the officers lacked probable cause to search the dormitory room. Since probable cause was lacking, the court did not address whether the requirements of the plain-view doctrine were met.

■■■ Probable cause for a search exists where, on the basis of all known circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983), 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332.) On the basis of the record before us, we conclude the officers had no probable cause to believe the items found in the van were stolen.

The record shows the officers recognized defendant while he was driving the van onto his brother's property. While police knew defendant was wanted by the sheriff of Adams County, Dodson testified at the suppression hearing he had no idea what the warrant was for and "gathered" defendant was a thief. Likewise, Ernst was aware of the outstanding warrant for defendant's arrest, but the record does not

indicate Ernst knew what crimes were involved.

The State's position that probable cause existed is undermined by Trooper Dodson's explicit statement the officers had no idea whether the items in the van were stolen at the time they looked into the van. At the suppression hearing, Dodson stated he arrested defendant on the basis of his knowledge of the outstanding warrant, not for the incriminating nature of the items observed in the back of the van. There were very few items in the vehicle. Dodson stated they were easy to see from his vantage point. No evidence adduced at the suppression hearing indicated the items were suspicious or incriminating.

While we agree with the State that defendant's two attempts at false identification rightly raised the officers' suspicions, the record shows the officers did not suspect the items were stolen until they had already recorded the serial numbers and removed some price tags from the boxes on the floor. Neither the appearance, the quantity, nor the events surrounding defendant's arrest indicated a fair probability that contraband or other evidence of crime would have been found in the vehicle. On this record, we conclude probable cause did not exist.

■■ ■ However, this determination does not end our consideration. The warrantless seizures in *Hicks* and *Singer* were contemporaneous with the discovery of the incriminating evidence. *Singer* concerned a single seizure. Here, police made two seizures. The taking of the price tags April 19 constituted a seizure separate from that of the van on April 20. As police had no probable cause to believe the van's contents were stolen at the time they looked into the van April 19, seizure of the tags was invalid under *Hicks*. The April 20 seizure of the van, while supported by probable cause, does not survive plain-view analysis. At that point, the initial intrusion was not justified—the police already had defendant in custody and they did not have a search warrant. No other exigent circumstances justified their entry onto the Brink property. It is well settled that plain view alone is never enough to justify the warrantless seizure of evidence. *Coolidge*, 403 U.S. at 468, 29 L. Ed. 2d at 584, 91 S. Ct. at 2039.

Further, the discovery was no longer inadvertent, as police knew in advance the location of the evidence they intended to seize. (*Coolidge*, 403 U.S. at 469-70, 29 L. Ed. 2d at 585, 91 S. Ct. at 2040; *People v. Madison* (1988), 121 Ill. 2d 195, 209, 520 N.E.2d 374, 381.) In these circumstances, requiring police to obtain a warrant would have imposed no inconvenience. (See *Coolidge*, 403 U.S. at 470, 29 L. Ed. 2d at 585, 91 S. Ct. at 2040.) Consequently, in the absence of any other exceptions to the warrant requirement, the vehicle and its contents were unlawfully seized. The trial court's denial of the motion to

suppress was manifestly erroneous.

This case does not involve inventory of an impounded vehicle as upheld in *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092. The State's assertion the vehicle was impounded and inventoried is belied by the fact the police left the van, its rear doors unlocked, on the Brink property overnight. The officers did not inventory the contents of the vehicle's cab. No testimony was sought or received on whether standard police procedures were employed.

Since defendant's conviction was based on unlawfully seized evidence, it must be reversed.

Reversed.

GREEN, P.J., and LUND, J., concur.