THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN SAWCZENKO, Defendant-Appellant.

First District (4th Division)   No. 1—86—3272

Opinion filed March 9, 1989.

Paul P. Biebel, Jr., Public Defender, of Chicago (Vicki Rogers, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Al Tomaso, and Judy L. DeAngelis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a jury trial, defendant, Stephen Sawczenko, was convicted of residential burglary and sentenced to 12 years in the Illinois Department of Corrections. Defendant raises three issues on appeal: (1) whether the trial court erred when it denied his motion to suppress evidence; (2) whether comments made by the State during its closing argument were prejudicial so as to deny him a fair trial; and (3) whether the trial court abused its discretion in sentencing him to 12 years' imprisonment. We affirm.

Before trial, defendant filed a motion to suppress evidence seized at 1334 N. Kildare Avenue in Chicago on September 20, 1985. Defendant argued that the search violated his fourth amendment rights because, while it was conducted pursuant to defendant's arrest, the arrest was a pretext for the search. At the hearing on the motion, two police officers who were involved with the arrest testified, Detective

James Baraniak (Baraniak) and Detective Richard Heinrich (Heinrich). Baraniak testified that he, Heinrich, Detective Silich (Silich) and Detective Perrington were investigating defendant in connection with an August 1985 residential burglary at 6201 N. Kilpatrick. Pursuant to that investigation an arrest warrant for defendant was issued on September 5. Attempts to arrest defendant at his last known address were unsuccessful because they were unable to locate him at that address. Baraniak testified that between September 17 and September 20 he and the other three detectives, whose names were also on the arrest warrant, saw defendant approximately 10 times, but they were unable to arrest defendant on any of those occasions because, in each instance, he was seen in a moving vehicle which they tried to follow but which they lost in traffic each time.

On the morning of September 20, the detectives received an anonymous telephone call informing them that defendant's car was parked at 1334 N. Kildare. The detectives drove to that location and staked out defendant's car from about 9 a.m. until 1 p.m. When they saw a child on the street and they asked him if he knew if defendant lived in the area, the child pointed out the apartment where defendant's father lived. Baraniak testified that he and Heinrich went to the back entrance of the building and Silich and Perrington went to the front. When he and Heinrich arrived at the back door of the apartment, he looked through a hole in the door and he observed defendant, in his underwear, come out of the bedroom, walk to the living room window, look out and then return to the bedroom. At the same time, Silich was knocking on the front door and ringing the bell to the apartment. Baraniak knocked on the back door several times, identified himself and informed defendant that he had a warrant for defendant's arrest. When defendant refused to open the door, Baraniak took a hammer that he found lying on the back porch and broke the lock on the door. The door led to the kitchen and the bedroom was off of the kitchen. When Baraniak entered the apartment, he saw defendant standing in the kitchen near the door leading to the bedroom. The door was open. Defendant was placed under arrest. Baraniak testified that while standing in the kitchen, he saw a gun under the bed in the bedroom, but that he thought that Heinrich saw the gun first and then pointed it out to him. Because defendant wanted to put clothes on, the detectives accompanied him to the bedroom, where they saw a duffel bag with an "Eddie Bauer" label that met the description of one of the items that had been taken during the burglary. At this point we note that the trial transcript revealed a different explanation of the circumstances leading to the seizure of the duffel bag during defendant's arrest. At trial,

Baraniak testified that he first saw the duffel bag when he was arresting defendant. He stated that defendant was standing in the kitchen near an open door that led to a bedroom. When Baraniak looked through the open doorway, he saw the Eddie Bauer bag. He then testified that the detectives entered the bedroom to get clothes for defendant and at that point the evidence was seized.

Detective Heinrich provided similar testimony. He testified that he participated in the investigation of defendant in connection with a residential burglary and that he was involved in the issuance of the arrest warrant and subsequent arrest of defendant. Heinrich stated that a few days prior to defendant's arrest he saw defendant in a vehicle on a highway, but because defendant was traveling in an opposite direction, Heinrich was unable to make an arrest. He also testified that on September 20 an anonymous caller notified police that defendant's father and sister shared a rear apartment at 1334 North Kildare, and that the detectives would find defendant's car parked at that location. The detectives drove to that address and staked out defendant's car for several hours, after which time they decided to go to the apartment. Heinrich testified that he accompanied Detective Jim Bryant to the back entrance to the apartment. They knocked on the door several times, announcing that they were police officers with a warrant for his arrest. When defendant refused to open the door, the detectives found a hammer and used it to break the door, which led to the kitchen. After defendant was placed under arrest, the detectives accompanied defendant to the bedroom so that he could get dressed. Heinrich stated that he believed that the door to the bedroom was open. He also testified that he thought that a gun was found while they were all in the bedroom, but he could not recall who found the gun.

In denying defendant's motion the court commented that it believed Baraniak's testimony, that defendant's arrest was based on a warrant, that at the time the evidence was observed by the detectives the detectives were in a place they had a right to be, and that the arrest was not a pretext for a search of the apartment.

■ Our review of the trial court's decision to deny defendant's motion to suppress recognizes that its ruling will not be set aside unless clearly erroneous. (*People v. White* (1987), 117 Ill. 2d 194, 512 N.E.2d 677; *People v. Brink* (1988), 174 Ill. App. 3d 804, 529 N.E.2d 1.) Defendant argues that the arrest was a subterfuge to gain access to the apartment for the dominate purpose of conducting a search for evidence. To prevail on a motion to suppress based on a subterfuge theory, defendant must prove that the motive of the police in arresting defendant at a particular place was to find evidence. (See 2 W. La-

Fave, Search & Seizure §6.7(d) at 728 (2d ed. 1987).) In support of this argument, defendant points to the delay from the time the arrest warrant was issued on September 5 to defendant's subsequent arrest on September 20 and to the fact that the detectives admitted having seen defendant on several occasions during that period of time and yet never attempted to arrest defendant. The trial court considered this argument and determined that the arrest was not a pretext to gain access to the apartment to conduct a search.

■ After a review of the record, we cannot say that the trial court's determination was manifestly erroneous. The circumstances of the delay and the failure to arrest defendant during any of the numerous times that the detectives saw defendant were sufficiently explained at the suppression hearing by the testimony of Baraniak and Heinrich. Baraniak testified that although he saw defendant on approximately 10 occasions from September 17 to September 20, on each occasion defendant was sighted in a moving vehicle and lost in traffic during attempts to follow defendant's vehicle. He also stated that they made several attempts to arrest defendant at his last known address, but that they were never able to find him there. Moreover, we note that prior to going to the apartment, the detectives staked out defendant's car for several hours. This conduct does not support defendant's subterfuge theory. It would seem that the detectives' intent was to arrest defendant when he returned to his car. Also, it is not clear that the detectives knew exactly what apartment defendant was in when they staked out his car. Testimony on this matter is contradictory. Baraniak testified that when they drove to 1334 N. Kildare they had been informed only that defendant's car was at that location. He indicated that it was not until several hours after their arrival that the detectives learned from a child on the street that defendant's father lived in an apartment at that address. Heinrich testified that the unidentified person who called the detectives on the morning of the arrest to inform them of the location of defendant's car also told them that defendant's sister and father had an apartment at 1334 N. Kildare. In any event, the detectives' conduct supports a finding that when they went to 1334 N. Kildare they did so for the purpose of watching defendant and with the intent of arresting defendant at his car when he returned to it.

Moreover, Baraniak testified that they attempted to arrest defendant at his last known address, but were unable to locate him there. Further, the testimony of Baraniak and Heinrich, though contradictory concerning when they learned of the location of defendant's father's apartment, was consistent to the extent that at the time they went to

1334 N. Kildare they did not know that defendant had been staying at that location. Therefore, they would have no expectation that if they arrested defendant at that apartment, they would find evidence of the crime.

■■ For these reasons we reject defendant's argument that his arrest was a pretext for an illegal search of the apartment. Further, not only is the legality of the seizure sustained as being pursuant to a legal arrest, but it was also proper under the plain view doctrine. A police officer may lawfully seize an item in plain view without a warrant if he views the object from a place where he has a right to be and if the facts and circumstances known to him at the time he acts give rise to a reasonable belief that the item seized constitutes evidence of criminal activity. (*People v. Singer* (1987), 156 Ill. App. 3d 470, 474-75, 509 N.E.2d 758; *People v. Loggins* (1985), 134 Ill. App. 3d 684, 480 N.E.2d 1293.) Under the plain view doctrine, evidence seized by officers in the absence of a warrant is nevertheless admissible if three conditions are met. "First, police must be properly on the premises through a warrant or an exception to the warrant requirement. Second, the police must discover the evidence inadvertently, not knowing in advance the location of the evidence. Finally, it must be immediately apparent that the items observed may be evidence of a crime, contraband, or otherwise subject to seizure." (*People v. Brink*, 174 Ill. App. 3d at 808, citing *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022.) In addition, probable cause to search the area must exist in order to invoke the plain view doctrine. (*Arizona v. Hicks* (1987), 480 U.S. 321, 94 L. Ed. 2d 347, 107 S. Ct. 1149; *People v. Brink*, 174 Ill. App. 3d 804, 529 N.E.2d 1.) Probable cause for a search exists where the circumstances are such that " 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *People v. Brink*, 174 Ill. App. 3d at 810, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332.

■■ Applying these principles to the instant case, we find that the circumstances support a conclusion that the seizure was a proper application of the plain view doctrine. First, the detectives were properly on the premises pursuant to a valid arrest warrant. Second, the detectives discovered the evidence inadvertently. While Baraniak's testimony at trial differed somewhat from his testimony at the suppression hearing, either explanation of the circumstances concerning the manner in which he first discovered the evidence indicates that his discovery was inadvertent. Third, it was immediately apparent that the duffel bag that the detectives saw in the bedroom met the description

given by the victim of the duffel bag taken in the burglary. Finally, for this same reason, we conclude that the detectives had probable cause to believe that the items they saw in the bedroom were the items that had been taken during the burglary.

On the basis of the record before us, we conclude that the arrest of defendant was not a pretext to conduct a search of the apartment and that the warrantless seizure of the evidence was proper pursuant to the plain view doctrine. Therefore, the trial court's denial of the motion to suppress was not manifestly erroneous.

Next, defendant contends that the State's remarks during closing argument were so prejudicial as to deny him a fair trial. Specifically, defendant objects to two portions of the State's remarks that were made in rebuttal to defense counsel's closing remarks. Those comments are set out below:

"MR. QUIRK [Assistant State's Attorney]: But look at what defendant says. Now you have got to realize that he was arrested about a year ago, back in September of '85, this is September of '86. He has had a whole year to think about this. Now, you figure, you know, you have the car linked up with him, caught with the proceeds, confesses. The picture doesn't look too bright, so he has a long time to think about what he is going to do, what he is going to tell you. Well, you obviously know now, deny, deny, deny."

Defendant also objects to the following comment:

"MR. QUIRK [Assistant State's Attorney]: And that is what it comes down to ladies and gentlemen, he is lying to you, he has had a long time to think about it, he covered the bases, but it is not the truth.

Ladies and gentlemen, the evidence is overwhelming, and if you want to believe for one minute the Defendant, the convicted felon, just think to yourselves, if that wasn't his stuff in the room, if he wasn't living there, if he just happened to move in the night before, don't you think his father, his mother, his sister, his brother, the other people that live there, his friends, would have come in there, and told you that, that he had just moved in the night before?

MR. WERKSMAN [defense attorney]: Judge, the Defendant doesn't have to put on any evidence.

THE COURT: That is correct, the jury is instructed to disregard that line of argument."

In order to consider whether or not these comments prejudiced defendant, it is necessary to review the evidence presented at trial.

James Schmidt testified that in August 1985 he was living at 6201 N. Kilpatrick. He went out of town on August 13, and upon his return the following evening, he found that his house had been burglarized and various items were missing, including a green Eddie Bauer duffel bag and several pieces of silverware. The next morning he called the police. His sister, Heidi Schmidt, identified the silverware and the duffel bag that were taken from the home.

Jerome Malon, a Chicago police officer, testified that he lived near the Schmidt residence. On August 14, 1985, he was installing a fan in a bedroom window when he noticed a man park a black Pontiac across the street from his house. He watched as defendant exited the vehicle and walked towards 6201 N. Kilpatrick. He saw defendant walk across the lawn and toward the north end of the home, where he entered the gate to the backyard. Approximately 10 minutes later, Malon observed defendant walking toward his vehicle carrying a green bag in his hand. As defendant was driving away, Malon wrote down the license plate number of the car. Unfortunately, it was the wrong plate number that he gave to the investigating officers the next day. However, he did give them a description of defendant and his vehicle.

On August 30, 1985, Officer Malon observed defendant in the same vehicle near the officer's home. Officer Malon approached defendant, who was sitting in his car, announced to him that he was a police officer, and tried to apprehend defendant but defendant fled from the scene in his vehicle. However, he was able to write down the correct license plate number and later gave it to the investigating officers. Officer Malon later identified defendant in a photo display as the man he saw on both occasions near his home.

Detective Baraniak testified that he was assigned to investigate the burglary which occurred at 6201 North Kilpatrick. The day after the burglary, he spoke with the victim, James Schmidt, and with Officer Malon, who gave him the license plate number of defendant's vehicle. Baraniak was able to ascertain that the vehicle belonged to defendant, whose address was listed as 3134 North Kimball. On September 5, the officer brought a photo display to Officer Malon's house from which Malon identified defendant.

In addition to the testimony that Baraniak gave at the suppression hearing, he testified at trial that the reason the officers were watching the car in the 1300 block of North Kildare was in anticipation that defendant would go to his vehicle and could then be placed under arrest. At the time of defendant's arrest, he was standing in the kitchen near an open door that led to a bedroom. While defendant was being placed under arrest, Baraniak looked through the door and saw a

green Eddie Bauer duffel bag on the floor in the bedroom. The officer immediately noticed that the bag fit the description of property which had been taken in the burglary on Kilpatrick Street.

During defendant's processing at the police station, defendant told the officers that he resided at 1334 North Kildare, which was the apartment where the arrest was made. Defendant also admitted that he was at 6201 North Kilpatrick on August 14, 1985. He said he had taken the green Eddie Bauer duffel bag and silverware from the home.

Defendant testified at trial that he did not burglarize the home at 6201 North Kilpatrick. He stated that he could not remember where he was on August 14, 1985, but that he resided with his mother at 4448 West Cortez. Defendant testified that he was at his father's house on North Kildare the day of the arrest because he fought with his mother the previous day. Defendant further stated that he never saw a green Eddie Bauer duffel bag or silverware in the bedroom of the apartment and defendant denied ever seeing Officer Jerome Malon prior to his arrest. He stated that he did not drive his car to the vicinity of 6201 North Kilpatrick on August 14 or on August 30, 1985. Defendant finally said that he occasionally loaned his car to his brother. However, on cross-examination defendant was not sure if his brother was using his car on the day of the burglary.

Before closing arguments were heard, the court explained to the jury that closing arguments were not evidence and that the jury should not consider anything said by counsel as evidence.

■ Initially, we note that defendant may have waived the issue of improper trial comments on appeal. The rule is well settled that the failure to raise an issue in a written motion for a new trial results in a waiver of that issue on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Both a trial objection and a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial. (*People v. Enoch*, 122 Ill. 2d at 186.) In the instant case, although defendant objected to some of the comments that he now challenges on appeal, he did not raise this issue in his motion for a new trial. Such conduct constitutes a waiver of the right to raise this issue on appeal.

■ However, assuming *arguendo* that this issue was preserved for appeal, we are not persuaded that the comments constitute reversible error. Several principles guide our consideration of this issue. First, we recognize that the trial court's determination of the propriety of the argument will generally be followed absent a clear abuse of discretion; and to constitute reversible error, the remarks must have substantially prejudiced defendant such that absent those remarks the verdict would

have been different. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 514 N.E.2d 970.) Also, we review the State's comments with the understanding that the State is allowed great latitude in making a closing argument. (*People v. Cisewski*, 118 Ill. 2d 163, 514 N.E.2d 970.) The verdict will not be disturbed on appeal where the challenged comments do not constitute a material factor in the conviction or where they are of such minor character that prejudice to defendant is not a probable result. *People v. Neumann* (1986), 148 Ill. App. 3d 362, 499 N.E.2d 487.

Applying these principles to the instant case, we first consider that portion of the State's rebuttal argument that referred to defendant as a liar. It is useful to understand the context in which those comments were made. The statements were made after defense counsel's closing argument which referred to the jury's responsibility for determining the credibility of defendant. Defense counsel also referred to Baraniak's testimony regarding defendant's alleged confession and suggested that Baraniak had "played with the truth." This portion of defense counsel's argument raised the issue of defendant's credibility and implied that Baraniak had lied. A defendant cannot complain of statements made in rebuttal which were invited by the defendant's own argument. (*People v. Neumann*, 148 Ill. App. 3d at 374.) Moreover, during trial the jury heard Baraniak's testimony that defendant had confessed and the jury also heard defendant's testimony that he had never made such a confession. Therefore, it was clearly evident to the jury, even before the State's comment, that either Baraniak or defendant had not told the truth when testifying. Given this conflicting testimony, we may go so far as to determine that the State's comments were fair comments on the testimony and reasonable inferences that could be drawn therefrom.

We also consider the extent of the evidence produced at trial establishing defendant's guilt. First, there was eyewitness testimony by Officer Malon, who observed defendant park his car near the Schmidt residence, watched defendant walk toward the house and then saw defendant go through a gate in to the backyard. Malon testified that a few minutes later he saw defendant return to his car carrying a green bag in his hand. About two weeks later, Malon again saw defendant in the same area and driving the same car. At this time, Malon was able to determine the correct license plate number of the car. Baraniak later learned that the vehicle was registered to defendant. Moreover, the items that had been taken from the Schmidts' house were found in the apartment at which defendant was arrested. In view of the overwhelming evidence of defendant's guilt, we find that the State's refer-

ences to defendant as a liar did not constitute a material factor in defendant's conviction and are not of such character as to prejudice defendant to the extent of denying his right to a fair trial.

Defendant also challenges the State's rebuttal comment on defendant's failure to produce his family or friends as witnesses. Immediately after this comment defense counsel objected and the court instructed the jury to disregard the statement. Also, prior to closing arguments the court instructed the jury that closing arguments were not evidence. Curative instructions such as these have been determined to cure prejudice. (*People v. Neumann,* 148 Ill. App. 3d 362.) Furthermore, as with the other comment challenged by defendant, given the considerable evidence of defendant's guilt we cannot say that the comment constituted reversible error.

■ Finally, defendant contends that the trial court abused its discretion when it sentenced him to 12 years' imprisonment. Defendant argues that we should reduce the sentence or vacate it and remand the cause for a new sentencing hearing. He claims that the court erred by considering improper factors and by failing to consider his rehabilitative potential, and the court used its sentencing power to penalize him for exercising his right to a jury trial. The standard of review of a sentence claimed to be excessive is whether the trial court abused its discretion, and absent such abuse, a sentence may not be altered on review. (*People v. James* (1987), 118 Ill. 2d 214, 514 N.E.2d 998; *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541; *People v. Migliore* (1988), 170 Ill. App. 3d 581, 525 N.E.2d 182.) While the trial court is mandated by the Illinois Constitution to determine a penalty according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship (Ill. Const. 1970, art. I, §11), it is also true that because the trial court is in the best position to determine the proper punishment, its decision is accorded great weight and deference. *People v. Migliore,* 170 Ill. App. 3d 581, 524 N.E.2d 677; *People v. Wallace* (1988), 170 Ill. App. 3d 329, 524 N.E.2d 677.

■ Guided by these principles we now review that portion of the record pertaining to sentencing to determine the facts the trial court had before it when setting defendant's sentence. The presentence investigation revealed that in June 1981 defendant was convicted of theft and sentenced to six months' supervision and ordered to pay $60 in restitution. In October 1981, defendant was convicted of burglary and possession of stolen property and sentenced to 36 months' probation. At the sentencing hearing the State asked the court to consider the following evidence presented at trial: (1) on the day of the burglary, defendant was seen fleeing the vicinity of the crime by a witness

who was a Chicago police officer; (2) this police officer saw defendant in a car just two weeks later in the same vicinity and observed the license plate number of the car which subsequently was determined to be registered to defendant; and (3) at defendant's arrest the items that were taken during the burglary were found in the apartment in which defendant was arrested. The State also referred to defendant's criminal history that included a conviction for theft in June 1981, and a conviction for burglary the following October. In mitigation, defense counsel noted that defendant was 23 years of age, commented that the burglary was not a violent crime, and pointed out that defendant stayed out of trouble while on probation for the October 1981 burglary conviction.

In sentencing defendant to 12 years, the court considered the evidence presented at trial, the presentence investigation and the matters offered by the State in aggravation and by defense counsel in mitigation. Specifically, the court relied on the following considerations: (1) the evidence showed that defendant had the proceeds of the burglary in his apartment at the time of his arrest; (2) there was an independent identification of defendant by a neighbor of the victim, who was also a Chicago police officer; (3) defendant's testimony was "blatant perjury"; (4) the professional manner in which defendant conducted the burglary, which was well planned; (5) defendant's failure to respond to the authority of the police officers at the time of his arrest; and (6) defendant's criminal history. The court also commented that a long period of incarceration was necessary to protect the public and that a short term of incarceration would be inconsistent with the ends of justice and would deprecate defendant's criminal conduct.

In reviewing the trial court's sentence, we note that, as a court of review, we cannot substitute our judgment merely because we might have balanced the sentencing factors differently. (*People v. Wallace*, 170 Ill. App. 3d 329, 524 N.E.2d 677.) Under the facts of this case, we find that the court properly weighed the relevant sentencing factors and did not abuse its discretion in sentencing defendant to 12 years' imprisonment for residential burglary.

Judgment affirmed.

JOHNSON and McMORROW, JJ., concur.