THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY GENTILE, Defendant-Appellant.

First District (4th Division)   No. 1—87—2009

Opinion filed November 1, 1990.—Rehearing denied December 19, 1990.

954

Michael J. Pelletier and Anna Ahronheim, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb and Paul Gliatta, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a bench trial, defendant, Anthony Gentile, was found guilty of possession with intent to deliver a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)). He was sentenced to six years in the Illinois Department of Corrections and fined $4,000. Defendant appeals, seeking reversal of his conviction and remand of the cause for a new trial, or reduction of his conviction from possession with intent to deliver to possession, or vacation of the $4,000 fine.

On appeal, defendant raises the following issues: (1) whether the trial court erred in denying his motion to quash arrest and suppress certain inculpatory evidence seized following his arrest; (2) whether his notebook was properly seized; and (3) whether the trial court erred in imposing a $4,000 fine.

We affirm.

At the hearing on defendant's motion to quash arrest and sup-

press evidence, defendant testified that on April 23, 1981, at approximately 5:20 p.m., he arrived at Chicago's O'Hare Airport on a commercial flight from Miami, Florida. Defendant was en route to Madison, Wisconsin, but had to change planes in Chicago. By profession, defendant testified that he is in the furniture and home remodeling business. At the time of the hearing, he was living in Madison with his fiancee.

After deplaning, he proceeded to the ticket counter to get information on his connecting flight. He then walked to a water fountain that was attached to a wall in the terminal. At that time, he was approached by two plainclothes police officers. One officer, Kenneth Labik, a drug enforcement agent, showed defendant his identification. Agent Labik stood at arm's distance from defendant. The other officer, Rosemary Burzinski, a Chicago police officer, stood behind defendant on the other side of the water fountain.

The officers then asked defendant whether they could talk with him. Defendant was also asked to produce his airline ticket and some form of identification. Defendant's baggage claim check was attached to his ticket. Defendant showed the officers his Pennsylvania driver's license. At that time, he also had a California address.

At one point, the conversation between defendant and the officers became "somewhat heated." Defendant refused to allow the officers to search his luggage without a warrant. According to defendant, Officer Labik repeatedly asked defendant if they could search his person. Defendant also refused these requests. Defendant testified that although he noticed that Agent Labik carried a revolver, Labik never pulled out the weapon.

Defendant testified that Officer Burzinski then motioned to Agent Labik to open defendant's jacket. Defendant was later handcuffed and placed under arrest for disturbing the peace. After his arrest, defendant was taken to an office where the officers conducted a strip search. Defendant stated that cocaine amounting to approximately 170 grams was found in his jacket pocket. Subsequently, a warrant was obtained to search defendant's luggage.

Officer Burzinski was called upon to testify at the suppression hearing. Her version of the events differed from defendant's testimony. We also note that, at trial, defendant testified that he was "high" from the cocaine he was carrying at the time of this encounter.

Officer Burzinski is a 13-year veteran with the Chicago police force. On April 23, 1981, she and Agent Labik were assigned to the Drug Enforcement Administration (hereinafter DEA) task force at

O'Hare Airport. She stated that the flights from Miami were being monitored, as Miami is considered a drug "source" city. According to Officer Burzinski, Agent Labik was not carrying a weapon. However, at trial Agent Labik testified that he was carrying a gun under his jacket but there is no evidence that he displayed the gun, or intentionally revealed it to defendant, or threatened defendant with it at any time.

At approximately 5:10 p.m., Officer Burzinski observed defendant disembark from a United Airlines flight arriving from Miami. She noticed that defendant looked at all of the people in the vicinity of his arrival gate. He made eye contact with her and Agent Labik. Defendant then proceeded to the airline ticket counter. He looked over his shoulder in the officers' direction several times as he walked. Before reaching the ticket counter, he stopped and looked around the area again. Defendant did not stand in line with the rest of the passengers at the ticket counter.

After standing in the area of the ticket counter for several minutes, defendant began to walk back in the direction of the area from which he had recently deplaned. The officers were also standing in that direction. The officers then approached defendant, showed him their identification and asked him whether they could question him. Defendant then asked if he was under arrest. Agent Labik informed him that he was not under arrest.

Defendant produced his Pennsylvania driver's license and his airline ticket. Defendant again asked whether he was under arrest. Agent Labik told him that he was not under arrest but that he was suspected of carrying narcotics. Defendant then became "very belligerent" over this accusation and pushed Agent Labik in the chest with his finger. Officer Burzinski intervened and told defendant not to touch Agent Labik. Defendant then moved toward Officer Burzinski with his hands up. Agent Labik told defendant to "control" himself. Defendant then pushed Agent Labik again in the chest with both hands. At that point, defendant was placed under arrest and searched in the DEA office at the airport. A substantial amount of cocaine was found in a plastic bag in defendant's jacket pocket.

Subsequently, Officer Burzinski retrieved defendant's luggage. A trained dog detected the presence of narcotics in defendant's suitcase. After a warrant had been obtained, the suitcase was searched at a Chicago police station. A notebook and drug paraphernalia were seized from the suitcase and inventoried.

After hearing testimony from defendant and Officer Burzinski, defendant's motion to suppress was denied. This motion was again

raised at trial and denied.

At trial, the State's evidence consisted of testimony from Officers Labik and Burzinski. A DEA forensic chemist also testified. The defense presented testimony from a drug rehabilitation expert and several character witnesses, including defendant's fiancee.

It was revealed at trial that prior to 1980 defendant lived in Pennsylvania. He owned a general contracting business while living there. Marijuana was the only drug he used prior to 1980. In 1980, defendant moved to California and began to use cocaine. He lived with some friends in California including a drug dealer. The people with whom he lived were part of the Hare Krishna religious sect. In exchange for rent and cocaine, defendant sold drugs for the group. The notebook found in defendant's suitcase had been used to record drug-related transactions. There were, however, no transactions recorded between August 1980 and April 1981 because, according to defendant, he was only selling small amounts of drugs during that period. He explained that he was trying to get out of the drug business.

One page of the notebook contained the notation, "April 23 run." Defendant explained that "run" meant binge and that his fiancee's birthday was on April 23. Defendant also left California on April 23 to go to Wisconsin via Miami. According to defendant, it was his intention to have one last cocaine binge before he attempted to break his habit. Defendant obtained the cocaine from a drug dealer in Miami. Defendant admitted to being in possession of the cocaine but denied any intent to deliver or distribute the contraband.

After both sides completed their arguments, defendant was found guilty of possession with intent to deliver cocaine. On June 10, 1987, defendant was sentenced to a six-year minimum term. A fine of $4,000 was also imposed.

Defendant first argues that the trial court erred in denying his motion to quash arrest and suppress certain inculpatory evidence. Defendant reasons that his initial detention in the airport was not supported by reasonable suspicion, and the arrest which led to the seizure of the cocaine was deliberately provoked by the police officers.

The State maintains that the encounter between defendant and the police officers was a consensual inquiry and not a seizure; defendant was seized only after he struck Agent Labik. We agree.

■ A trial court's findings on a motion to suppress will not be disturbed unless manifestly erroneous. (*People v. Long* (1983), 99 Ill. 2d 219, 231.) Although defendant's testimony differed in some respects from the testimony given by the officers, the trial court re-

solved the discrepancies in favor of the officers. Determinations as to the weight and credibility given to a witness in a nonjury trial are an exclusive function of the trial court. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 165.) A court of review will not disturb these determinations unless manifestly erroneous. (*People v. Ware* (1988), 180 Ill. App. 3d 921, 929.) We, therefore, defer to the trial court's decision with respect to witness credibility.

■ The fourth amendment to the U.S. Constitution, as applied to the States through the fourteenth amendment, provides, in pertinent part, that "[t]he right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." (U.S. Const., amend. IV.) A person is seized in the constitutional sense when an officer restrains the individual's freedom to leave the officer's presence. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) However, when an individual is objectively free to leave the officer's presence during questioning in a public place, a seizure has not occurred. (*Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319.) "[L]aw enforcement authorities may legitimately approach a deboarding airline passenger and ask him questions provided the passenger's freedom is not restrained." *People v. Brett* (1984), 122 Ill. App. 3d 191, 195.

Defendant contends that he was seized, within the meaning of the fourth amendment, at two points. The first seizure occurred, defendant argues, when the officers asked him for identification and his airline ticket. The second seizure occurred when the officers informed him that he was suspected of carrying narcotics. We, however, do not find a seizure taking place at these junctures as defendant was also told twice that he was not under arrest. It was not until he pushed Agent Labik that defendant was placed under arrest.

■ We find, therefore, that under the circumstances of this case defendant was objectively free to leave the officers' presence until such time as he was actually placed under arrest. We do not find that the officers attempted to prevent his departure through threats or a show of authority prior to the time defendant was arrested. Defendant was objectively free to leave the officers' presence. (See *People v. Price* (1990), 195 Ill. App. 3d 701.) If defendant believed that he was not free to leave, then his belief was unreasonable. (*People v. Brett* (1984), 122 Ill. App. 3d 191.) As previously noted, defendant admitted that he was "high" at the time of the encounter. Defendant also testified that cocaine put him in a "euphoric state" that gave him a "false view" of himself. Conceivably, the cocaine may have affected his per-

ception of the events that transpired with the officers. We find his initial encounter to be consensual which later became a seizure after defendant was placed under arrest for pushing Agent Labik. See *United States v. Mendenhall* (1990), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870; *People v. Price* (1990), 195 Ill. App. 3d 701; *People v. Jones* (1989), 190 Ill. App. 3d 416; *People v. Forrest* (1988), 172 Ill. App. 3d 385.

The next issue defendant raises is whether his notebook and the contents therein were properly admitted into evidence. Defendant contends that although the officers had obtained a warrant which authorized them to search defendant's suitcase for narcotics and narcotics-related paraphernalia, the officers exceeded the scope of their warrant when they seized the notebook found in defendant's suitcase.

Defendant had recorded all of his drug-related transactions up until August 1980 in the notebook. The notation "April 23 run" was also contained in the notebook. Defendant argues that the erroneous admission of the notebook requires reversal of this case since, he believes, the trial court considered the notebook to be critical evidence as to the element of intent to deliver.

The trial court admitted the notebook, finding that it could properly be characterized as drug paraphernalia pursuant to the Drug Paraphernalia Control Act (Ill. Rev. Stat. 1985, ch. 56½, par. 2101 *et seq.*) (hereinafter the Act). The Act states:

> " 'Drug paraphernalia' means all equipment, products and materials of any kind which are peculiar to and marketed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body cannabis or a controlled substance in violation of the 'Cannabis Control Act' or the 'Illinois Controlled Substances Act.' " Ill. Rev. Stat. 1985, ch. 56½, par. 2102(d).

■ The section also lists various kits, devices, equipment, diluents and adulterants, or objects that are peculiar to and marketed for use in illegal drug distribution. We, however, do not find that defendant's notebook comes within the Act's definition of drug paraphernalia. The notebook is not marketed for or particularly peculiar to the illegal distribution of drugs. We find that since the notebook was not described in the warrant, the officer exceeded the scope of the warrant. *People v. Fragoso* (1979), 68 Ill. App. 3d 428, 436.

The trial court, however, stated that it was not limited by the def-

inition as provided in the Act in admitting the notebook. The trial court also held that the notebook may be admissible under the "plain view" doctrine or the "good faith" exception to the exclusionary rule. This rule prohibits the warrantless seizure of incriminating evidence.

■ A violation of the fourth amendment may not be found by the warrantless seizure of incriminating evidence if the item seized was in plain view in a place where the police officers had a right to be; its incriminating character is immediately apparent; and there is probable cause to believe that the item is connected to the crime charged. (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 465-66, 29 L. Ed. 2d 564, 582-83, 91 S. Ct. 2022, 2037-38.) The evidence, however, need not be "inadvertently" discovered. *Horton v. California* (1990), 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301.

In the instant case, the officers had a valid warrant to search the suitcase; the notebook was in plain view in the suitcase; the incriminating character was immediately apparent as it was in the same suitcase and in proximity to the seized drug paraphernalia which was also in the suitcase; and there was probable cause to believe that the notebook was connected to the crime charged, *i.e.*, possession with intent to deliver. If, as defendant claims, the cocaine was for his own personal use, defendant has provided no rational reason as to why he would carry a drug ledger notebook.

Defendant, on the other hand, contends since the notebook was not lying in an open position when it was discovered, the contents of the notebook were not in plain view. In *People v. Loggins* (1985), 134 Ill. App. 3d 684, this court was presented with an analogous situation. Police officers in *Loggins* entered the defendant's apartment pursuant to an arrest warrant. The defendant, in that case, was an armed robbery suspect.

Upon entering defendant's apartment, one of the officers saw a purse on defendant's bedroom dresser. The purse matched the description of the purse stolen from the complainant. The officer then proceeded to open the purse and examine the contents to determine whether it belonged to complainant. After examining the contents of the purse, it was determined that the purse did in fact belong to the complainant. We found that the purse was properly admitted under the "plain view" doctrine notwithstanding the fact that the purse was in a closed position when it was found. *Loggins*, 134 Ill. App. 3d at 688.

■ Similarly, in the instant case, although the notebook was not open when the officers discovered it in "plain view" in defendant's suitcase, we find that the notebook and the contents therein may be

properly admitted under the "plain view" doctrine.

■ Even assuming, *arguendo*, that the notebook was not properly admissible under this doctrine, we find that because of the overwhelming evidence of defendant's guilt the error, if any, in admitting the notebook and the contents therein was harmless. Defendant was carrying approximately 138 grams of cocaine in his jacket pocket at the time of his arrest. According to defendant the cocaine was worth approximately $12,000. The State established the street value of the cocaine to be between $75,000 and $95,000. The purity level of the cocaine was 83%. This is considered to be a high level of purity for purposes of blending it with another substance to further expand the amount of cocaine. Moreover, defendant carried the blending agent with him in the suitcase that was seized.

We also note that defendant carried a great deal of drug paraphernalia in his suitcase, including a grinder (to make the cocaine as fine as possible), a strainer, a lighter, a pipe or "snorting tube," several small spoons, wrapping paper used to smoke marijuana, several bottles filled with the cocaine cutting agent, and a multicolored package containing numerous zip-lock bags which could conceivably be used for the distribution of cocaine. Further, defendant testified that he had previously sold drugs and that he went to Miami to meet a drug dealer for whom he was to sell cocaine. Under the circumstances of this case, we do not find that the trial court erred in finding defendant guilty of possession with intent to deliver cocaine.

In light of this holding, we need not address the admissibility of the notebook under the good-faith exception to the exclusionary rule.

Finally, defendant argues that the $4,000 fine must be vacated due to his indigence. Defendant contends that the trial court failed to consider his ability to pay. Moreover, defendant argues that if a mandatory fine was imposed pursuant to section 5—9—1.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1.1), it must be vacated, as the offense was committed on April 23, 1981, and section 5—9—1.1 did not become effective until January 1, 1982. We agree that a mandatory fine may not be imposed in this case.

However, while the court does not state which section it relies upon, a fine may properly be imposed pursuant to section 5—9—1(d). (Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1(d).) This section gives the trial court the authority to impose a fine after considering "the financial resources and future ability of the offender to pay the fine." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1(d)(1).) The section, in effect, authorizes the discretionary imposition of a fine.

■ Prior to imposing the sentence and fine, the trial court heard

arguments in mitigation and aggravation including an argument by defense counsel that defendant had gone from "working diligently for a construction company to starting his own business *** [and] he has completed several projects for many people in the community." During trial, the court heard testimony from several of defendant's witnesses who had, in fact, been clients through his company, Exquisite Interiors. The trial court also heard testimony that defendant had previously had a habit that could result in his using in excess of $10,000 worth of cocaine in a matter of days. In light of the evidence presented, we do not find that the trial court abused its discretion in imposing the fine. Further, we find that the trial court properly deducted the fine from defendant's $10,000 bond. See *People v. Foreman* (1987), 153 Ill. App. 3d 346.

Accordingly, the decision of the trial court is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $75 as costs and fees for this appeal pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, and *People v. Nicholls* (1978), 71 Ill. 2d 166.

Affirmed.

LINN and JIGANTI, JJ., concur.