THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES LYNCH, Defendant-Appellant.

First District (2nd Division)   No. 1—91—0405

Opinion filed January 26, 1993.

Michael J. Pelletier and Anne E. Meyer, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Margaret Regan, and Caren J. Armbrust, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Following a stipulated bench trial in the circuit court of Cook County, defendant James Lynch was convicted of cannabis trafficking and possession of cannabis with intent to deliver. Two concurrent six-year terms of imprisonment and a $1,000 fine were imposed. On appeal, defendant contends that: (1) the trial court erred in denying his motion to suppress; (2) he was not proven guilty of cannabis trafficking beyond reasonable doubt; and (3) his conviction for possession with intent to deliver must be vacated because it is a lesser-included offense of the trafficking conviction.

At the hearing pursuant to defendant's motion to suppress, Detective Richard Crowley of the Chicago police department and United States Drug Enforcement Administration (DEA) testified that he was assigned to the Amtrak terminal at Union Station on December 11, 1989, in order to intercept passengers involved in drug trafficking. He was interested in train 22, which originated in Los Angeles, California, and stopped in San Antonio, Texas, before arriving in Chicago and then was scheduled to travel to Buffalo, New York. According to Detective Crowley, Los Angeles and San Antonio are documented as "source cities" for controlled substances and marijuana. Prior to the

arrival of the train, Detective Crowley received information from Dennis Kroll, an Amtrak detective, that an individual had purchased a one-way cash ticket in the name of Bob Clark for travel from San Antonio to Buffalo, New York. In addition, the purchaser had given an invalid call-back number when obtaining the ticket.

Detective Crowley observed defendant as he exited one of the last cars. Defendant was carrying two large padlocked suitcases which appeared heavy. As defendant placed the luggage on a cart, he looked over his shoulder. While walking the remaining 100 yards through the train terminal, he looked over his shoulder about three times. Crowley continued to observe defendant for about five minutes while defendant positioned himself in a well-lit public area, close to monitors providing departure information.

Detective Crowley, accompanied by Sergeant Thomas Martin, approached defendant, identified himself and asked if he could speak with defendant. Defendant agreed and Crowley informed defendant that he was not under arrest and did not have to speak to the police. In response to Crowley's questions, defendant identified himself, and stated that he had just arrived from San Antonio, Texas, and was waiting to board a train to Buffalo, New York. Upon request, defendant produced a California driver's license with the address penciled out. When Crowley requested defendant's train ticket, defendant responded that he could not recall what he had done with it. Crowley reminded defendant that he would need the ticket to proceed to New York, and defendant then produced a ticket. The ticket represented a one-way fare from San Antonio, Texas, to Buffalo, New York, issued to Bob Clark. Defendant explained that his friend Bob Clark had purchased the ticket in San Antonio. Defendant stated that he did not know Clark's address or telephone number.

Detective Crowley informed defendant that he was conducting narcotics investigations at train stations and asked if defendant was transporting controlled substances. Defendant responded that he was not and further denied the officers permission to search his luggage. Further, defendant stated that the three pieces of luggage were his. Crowley told defendant that his luggage would be detained for a canine sniff test. In addition, Crowley explained that the luggage would be transported to the DEA office on the second floor of the train station because the dog was trained to attack and could not be released around the public. The dog was a certified narcotics canine, and it gave a positive reaction to two of defendant's suitcases indicating the presence of contraband. Crowley then informed defendant that the suitcases would be held while a search warrant was obtained, and

defendant was given a receipt for the suitcases which were detained. Although Detective Crowley initially testified that only the two bags to which the canine had a positive reaction were held, he admitted that all three bags were detained after he was shown a copy of the receipt given defendant for his luggage. After a warrant was obtained, the suitcases were opened and two were found to contain marijuana.

Officer Dennis Kroll testified that he is a criminal investigator with the Amtrak police. As part of his job responsibilities, he reviews passenger manifests for possible drug couriers. Kroll stated that he looks for passengers travelling one way from "source cities," paying cash for the fare and making reservations within two days of departure. In addition, he checks the telephone numbers provided by passengers when reservations are made. Kroll testified that on December 11, 1989, he reviewed the passenger manifests for train 22 and was suspicious about a passenger named Bob Clark. A one-way ticket had been purchased for $229 in cash and the reservation was made two days prior to departure. Kroll telephoned the call-back number, and the person who answered advised him that there was no Bob Clark at that number.

Defendant testified that he was stopped by the police after he exited his train and entered the main waiting area at Union Station. According to defendant, he did not consent to this detention. The officers questioned him for about 10 minutes and asked to search his luggage. After defendant denied permission, the officers took his luggage to another location in the station.

Defendant further testified that a friend purchased the ticket with cash and the name on the ticket was Bob Clark. The officers did not touch him or display their weapons. According to defendant, the officers kept his driver's license and took it upstairs with the luggage. In addition, defendant testified that he produced his ticket upon request. The officers surrounded defendant when they went upstairs, but did not touch him. Defendant testified that he went upstairs because he was told that he could watch the sniff test. When they arrived upstairs, defendant was searched and then was denied permission to watch the test. Finally, defendant admitted that he was found guilty of false statement on May 14, 1987, in a New York Federal court.

Defendant maintains that the trial court erred in denying his motion to suppress. We disagree.

■ On a motion to suppress evidence, the burden is on the defendant to demonstrate that the particular intrusion was illegal. (*People v. Brink* (1988), 174 Ill. App. 3d 804, 529 N.E.2d 1.) Further,

the trial court's determination on a motion to suppress will not be overturned unless it is manifestly erroneous. *People v. Conner* (1979), 78 Ill. 2d 525, 401 N.E.2d 513.

In the instant case, there are two intrusions which must be evaluated—the initial stop of defendant and the detention of his luggage for submission to a sniff test. We will first address the initial approach by the officers.

■ A police officer may, without effecting a seizure in violation of the fourth amendment, approach an individual, request consent to ask a few questions, and ask if the individual will provide identification. (*California v. Hodari D.* (1991), 499 U.S 621, 113 L. Ed. 2d 690, 111 S. Ct. 1547.) A person is "seized" for purposes of the fourth amendment only when his freedom of movement is restrained by physical force or show of authority such that a reasonable person would believe that he was not free to leave. *Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319; *People v. Hicks* (1989), 183 Ill. App. 3d 636, 539 N.E.2d 756.

■ In the instant case, the testimony of the officers, which the trial court found credible, established that Detective Crowley approached defendant in a well-lit public area, identified himself and requested the opportunity to ask a few questions. Defendant was further informed that he was not under arrest. We believe that under these circumstances a reasonable person would believe that he was free to leave.

■ Turning our attention to the detention of defendant's luggage, we note that the temporary detention of luggage for submission to a sniff test by trained drug-detection dogs is not a "search" within the meaning of the fourth amendment. (*United States v. Place* (1983), 462 U.S. 696, 77 L. Ed. 2d 110, 103 S. Ct. 2637.) However, this type of detention must be supported by a reasonable and articulable suspicion based on objective facts that the luggage contains contraband. (*Place*, 462 U.S. at 706, 77 L. Ed. 2d at 120, 103 S. Ct. at 2644.) The issue presented is whether the trial court's determination that the detention of defendant's luggage was supported by a reasonable and articulable suspicion is manifestly erroneous.

In the instant case, the State argued that the following factors provided a reasonable and articulable suspicion that defendant's luggage contained contraband. Defendant had a one-way ticket from San Antonio, a source city, to Buffalo, New York, with a stop in Chicago. The ticket was purchased for $229 in cash two days prior to departure and issued in the name of Bob Clark. A telephone call placed to the call-back number provided by the purchaser revealed that no one

named Bob Clark was at that number. When the train arrived at Union Station, defendant exited the second to last car and was one of the last people to leave the train. He was carrying two large, padlocked suitcases which appeared heavy, as well as a small black bag, and he looked over his shoulder about three times. After defendant was approached by the detectives, he provided a driver's license issued to James Lynch. He initially stated that he could not find the ticket. When he subsequently produced a train ticket issued to Bob Clark, defendant explained that the ticket was purchased by Bob Clark, but defendant provided no additional information concerning this individual.

In determining whether a reasonable and articulable suspicion existed, we must examine the totality of evidence. (*United States v. Sokolow* (1989), 490 U.S. 1, 104 L. Ed. 2d 1, 109 S. Ct. 1581.) Analysis of the totality of the factors in the instant case reveals that the decision of the trial court was not manifestly erroneous because these facts provided a reasonable and articulable basis.

Defendant cites *People v. Boyd* (1991), 215 Ill. App. 3d 894, 576 N.E.2d 116, *People v. Sherman* (1989), 190 Ill. App. 3d 814, 547 N.E.2d 476, and *People v. Nelson* (1989), 188 Ill. App. 3d 619, 544 N.E.2d 1111, and to support his assertion that his motion was erroneously denied. However, *Sherman* and *Nelson* present situations in which the trial court granted the defendants' motions. We again note that the standard of review is whether the determination of the trial court is manifestly erroneous. Further, the cases are factually distinguishable. In *Sherman* there was no testimony that the defendant acted suspiciously or in a manner that led the officers to believe he was carrying narcotics. In the instant case, defendant looked over his shoulder at least four times, did not initially give the officers his ticket and did not provide any information concerning Bob Clark, the individual with whom defendant stated that he stayed in Texas and who bought the ticket. In *Nelson* the ticket was purchased in the defendant's name. *Boyd* presented a situation where the trial court's order denying defendant's motion was reversed on appeal where defendant travelled in a sleeper compartment under his own name with a ticket purchased for cash, and exhibited nervousness. We find the cited cases do not demonstrate that the determination of the court was manifestly erroneous and thus subject to reversal.

■ Defendant further asserts that he was not proven guilty of cannabis trafficking beyond a reasonable doubt because the evidence was insufficient to demonstrate that he brought the cannabis into Illi-

nois. The State asserts that defendant waived this issue by failing to object at trial and raise it in a post-trial motion.

Initially, we note that the issue of whether a defendant was proven guilty beyond a reasonable doubt is not subject to waiver and can be raised on review despite failure to preserve this issue. Further, the applicable standard is whether, when the evidence is viewed in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.

The applicable statute provides, in pertinent part:

"[a]ny person who knowingly brings or causes to be brought into this State for the purpose of manufacture or delivery or with the intent to manufacture or deliver 2,500 grams or more of cannabis in this State or any other state or country is guilty of cannabis trafficking." (Ill. Rev. Stat. 1989, ch. 56½, par. 705.1(a).)

According to defendant, the evidence did not demonstrate that he brought the requisite amount of cannabis into Illinois because a rational trier of fact could have found that he obtained the cannabis in Illinois. We disagree.

The State has the burden of establishing each element of the offense beyond a reasonable doubt. However, this burden does not require that the State demonstrate every link in the chain; rather, the court can rely upon the reasonable inferences which arise from circumstantial evidence. In the instant case, defendant boarded the train in San Antonio, Texas. When he exited the train in Chicago, he was carrying two padlocked bags later found to contain cannabis. Detective Crowley testified that defendant admitted that the bags belonged to him. Further, the stipulated evidence identified the luggage as belonging to defendant. We find this evidence sufficient to support a finding by a rational trier of fact that defendant had the luggage and its contents when he boarded the train.

■ As his final argument on appeal, defendant asserts that his conviction for possession of cannabis with intent to deliver must be vacated because it was based on the same act as that which supported his conviction for cannabis trafficking.

Our analysis of the two statutes at issue reveals that section 5 of the Cannabis Control Act (Act) is a lesser-included offense of section 5.1. (Ill. Rev. Stat. 1987, ch. 56½, pars. 705, 705.1.) An included offense is defined as an offense which is demonstrated by "proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the

offense charged." (Ill. Rev. Stat. 1989, ch. 38, par. 2—9.) Section 5 of the Act provides that "[i]t is unlawful for any person knowingly to *** possess with intent to deliver *** cannabis." (Ill. Rev. Stat. 1989, ch. 56½, par. 705.) Thus, the statutory definition of cannabis trafficking requires proof of all the elements of the offense of possession of cannabis with the intent to deliver with the additional element of bringing 2,500 grams or more into the State. Based upon our review of the statutory definition of the offenses and the offenses charged (*People v. Le Pretre* (1990), 196 Ill. App. 3d 111, 552 N.E.2d 1319), we find that possession of cannabis with intent to deliver is a lesser-included offense, and multiple convictions were improper. *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

Accordingly, defendant's conviction for possession of cannabis with intent to deliver and the associated six-year sentence are vacated. Defendant's conviction for cannabis trafficking as well as the six-year sentence and $1,000 fine are affirmed.

Affirmed in part; vacated in part.

McCORMICK, P.J., and DiVITO, J., concur.