THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RENE OLIVAREZ, Defendant-Appellant.

First District (5th Division)    No. 1—94—0831

Opinion filed March 29, 1996.

Michael J. Pelletier and Gwendolyn Reeves, both of Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Robert Robertson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE COUSINS delivered the opinion of the court:

Defendant Rene Olivarez was convicted, following a bench trial, for cannabis trafficking and possession of cannabis with intent to deliver. The trial judge sentenced him to eight years' imprisonment. On appeal, Olivarez argues that: (1) the cause should be remanded for a finding of fact as to whether the encounter between him and the police was consensual; (2) his sentence must be vacated and the cause remanded because both parties did not agree to the sentence and a presentence report was not presented to or considered by the court prior to imposition of sentence; (3) the offense of possession of cannabis with intent to deliver must be vacated because it is a lesser included offense of cannabis trafficking based on the same act of carrying a bag containing cannabis; and (4) the order of sentence and commitment must be amended because the order does not accurately reflect his sentence credit for time spent in custody from the date of arrest to the date of sentencing.

## BACKGROUND

On December 7, 1992, Olivarez was charged by indictment with cannabis trafficking and possession of cannabis with intent to deliver. Prior to trial, Olivarez filed motions to quash arrest and to suppress evidence. On March 4, 1993, a hearing was held on the motions. Officer Mostek testified that on November 3, 1992, he was assigned to the DEA task force, conducting narcotics investigations and monitoring Amtrak trains arriving from California and Texas. Mostek was dressed in plain clothes and working with Officers Krok, Gainer and Boertlien. He was looking for couriers of controlled substances who fit the description of "male [H]ispanics coming from a source city with bags in their hands." At approximately 2:10 p.m., Mostek was standing on the platform, next to an Amtrak train that had just arrived from Texas. He saw two men, Olivarez and Ralavara Valencia, who fit the description of drug couriers. Olivarez was carrying a large green bag and he was walking toward the entrance of the station with Valencia. As Olivarez walked past Mostek, Olivarez looked

quickly over his shoulder at Mostek. Mostek and Krok began to follow Olivarez, and Olivarez looked over his shoulder at Mostek at least two more times. Mostek saw Olivarez lean towards Valencia and then both looked over their shoulders at Mostek again. Mostek and Krok continued to follow the men into the train station until Olivarez and Valencia stopped and turned back towards the entrance. The officers approached them. Mostek displayed his badge, identified himself and asked if he could talk to them. Olivarez responded "yes" and Mostek asked them if they were traveling together. Olivarez responded "yes" and Valencia said "no." Mostek further asked Valencia if he knew Olivarez, and Valencia responded "no," he had just met Olivarez on the train. Mostek then asked the men if they had train tickets. Olivarez said "no" and Valencia said "yes." Olivarez stated that Valencia had his ticket because Valencia had purchased and made reservations for both of them.

Valencia asked Mostek if there was any trouble. Mostek responded that there was no trouble and informed Olivarez and Valencia that he was conducting narcotics investigations which involved monitoring trains from Texas and California. Mostek informed them that they were not under arrest, he was not detaining them and thanked them for their cooperation. Olivarez and Valencia did not attempt to leave. Mostek asked to see their identification, and Olivarez produced a social security card. Mostek returned the identification. Olivarez and Valencia consented to Mostek's searching their bags. Officer Krok searched Olivarez' bag and found several large packages he believed to be cannabis. Olivarez was arrested and subsequently charged with cannabis trafficking and possession of cannabis with intent to deliver. Mostek's report identified Officers Gainer and Boertlien as witnesses.

Olivarez testified at the hearing on his own behalf. On November 3, 1992, at approximately 2:15 p.m., he got off a train at Union Station and was walking with Valencia toward the station entrance. As he was walking inside the station, a man approached on his right side. Olivarez was not aware the man was a police officer until the man presented his badge.

The officer began asking Olivarez and Valencia questions. Olivarez noticed two other men standing around, who also showed their badges and identified themselves as police officers. The first officer asked them for their identification and train tickets. The officer did not immediately return Olivarez' identification. The officer continued to ask Olivarez questions and then searched his bag. Olivarez denied that he gave the officer permission to search his green bag. Olivarez stated that no one had given him any packages to place inside his

bag. Olivarez further testified that he assumed that Valencia had given the officer permission to search Valencia's bags. He stated that the officer was not visibly armed and the entire questioning took place inside the train station, which was crowded "like any other train station." Olivarez estimated that five minutes elapsed between the time the officer first questioned him and when the officer opened his duffel bag.

At the conclusion of the hearing, the trial judge denied the motion and based his decision upon Olivarez' "lying statements to the police officers concerning the ticket and his knowledge of the [other] individual."

At the bench trial, the parties stipulated that the evidence heard on the motion to suppress would be the same evidence heard at trial. The State called Officer Krok. He testified that on November 3, 1992, he was on duty with Officer Mostek at Chicago's Union Station. Olivarez consented to Krok's searching his bag, and Krok seized bundles wrapped in plastic which he believed to be cannabis.

After both parties stipulated that the chain of custody was proper, the trial judge found Olivarez guilty of both offenses and sentenced him to eight years' imprisonment. Olivarez appealed.

We affirm in part, vacate in part and remand.

OPINION

I

■ Olivarez first contends that this case should be remanded for a finding of fact as to whether the encounter between him and the police was consensual or a detention. An order or judgment granting or denying a motion to suppress should state the findings of fact and conclusions of law upon which the order or judgment is based. 725 ILCS 5/114—12(e) (West 1992). This requirement serves the salutary purpose of enlightening the appellate court as to the evidence and reasoning relied upon below, and thereby facilitates review. *People v. Hinton*, 249 Ill. App. 3d 713, 718, 619 N.E.2d 198 (1993). However, findings of fact and conclusions of law do not require reversal if the evidence would sustain the ruling of the trial court. *Hinton*, 249 Ill. App. 3d at 718. On a motion to suppress evidence, the burden is on the defendant to demonstrate that the particular intrusion was illegal. *People v. Lynch*, 241 Ill. App. 3d 986, 989, 609 N.E.2d 889 (1993); *People v. Brink*, 174 Ill. App. 3d 804, 529 N.E.2d 1 (1988). Further, this court will not disturb the determination of a circuit court on a motion to suppress evidence unless the determination is manifestly erroneous. *People v. Williams*, 164 Ill. 2d 1, 12, 645 N.E.2d 844 (1994).

In this case, during the argument on the motion to suppress, the following colloquy took place:

"MS. ROSENBLUM [Assistant State's Attorney]: In this situation, Officer Bostick [*sic*] testified that he approached Mr. Olivarez and another individual after observing them for sometime for the purposes of a consensual interview, and the first statement they said and the question they asked was hello, I'm a police officer, may I speak to you. Both officers—

THE COURT: Now, what do you expect a citizen to say?

MS. ROSENBLUM: They can say yes or no.

THE COURT: What do you think any citizen is going to say? No?

MS. ROSENBLUM: Citizens who have nothing to hide would say no, and citizens who have something to hide would weigh their alternative.

THE COURT: That's debatable.

\* \* \*

MS. ROSENBLUM: The officer then asked if they could search the defendant's bag. The defendant said yes, you could search my bag, they opened the door. Had the defendant said no, the officers would have obtained a search warrant or at least a narcotics dog to determine whether probable cause existed. If the defendant had said no, the State would also submit that based upon the defendant's lying to the officers about his knowledge of the other individual, lying to the officers about where his ticket was, and the fact that the other individual who he previously stated he knew nothing about was carrying both their tickets, the officer certainly had probable cause to believe that the individual was involved in committing—

THE COURT: Why is that relevant?

MS. ROSENBLUM: Reasonable suspicion of probable cause is relevant for this particular case because Rene Olivarez consented to the search of those bags. Those bags—

THE COURT: That sounds to me suspicious and taken under duress. Your better argument, an argument that I will overrule Motion to Suppress is based upon a defendant's lying statement to the police officers concerning the ticket and his knowledge of the other individual. I think that is a legal, articulable reason that fits the case law, and, therefore, the motion to reconsider the Court's ruling on the motion to suppress will be denied."

Although the trial judge concluded that the search of Olivarez' bag was proper based on the information the officers received after they stopped Olivarez, he did not make a specific finding regarding whether the initial stop was consensual. Therefore, we must

determine whether the initial stop was consensual or a seizure. We believe there is sufficient evidence to sustain the judge's ruling.

The Constitution of the United States as well as the State of Illinois Constitution protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. A person is seized in the constitutional sense when an officer physically restrains the individual's freedom to leave the officer's presence or the officer shows authority such that a reasonable person would believe that he is not free to leave. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *Florida v. Royer*, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983). However, a police officer may, without effecting a seizure in violation of the fourth amendment, approach an individual, request consent to ask a few questions, and ask if the individual will provide identification. *California v. Hodari D.*, 499 U.S. 621, 113 L. Ed. 2d 690, 111 S. Ct. 1547 (1991).

Olivarez relies on several cases, notably, *Reid v. Georgia*, 448 U.S. 438, 441, 65 L. Ed. 2d 890, 894, 100 S. Ct. 2752, 2754 (1980), to illustrate his point that the initial stop was nonconsensual. In *Reid*, the appellate court reversed the trial court's grant of defendant's motion to suppress because the defendant, "in a number of respects, fit a 'profile' of drug couriers compiled by the [DEA]." *Reid*, 448 U.S. at 440, 65 L. Ed. 2d at 893, 100 S. Ct. at 2753. The defendant had deplaned from a flight arriving from a "source city," carried limited luggage, appeared to try to conceal the fact that he was traveling with another passenger, and glanced back at the other passengers until they reached the main lobby. The Supreme Court granted *certiorari*. The Supreme Court reversed the appellate court, holding that, under the circumstances, the agents could not have reasonably suspected defendant of criminal activity. The court further stated that the appellate court's judgment could not be sustained insofar as it rested on the determination that the DEA agent lawfully seized the defendant when he approached him outside the airline terminal. *Reid*, 448 U.S. at 441, 65 L. Ed. 2d at 894, 100 S. Ct. at 2754.

Under the facts in this case, we do not believe that Olivarez was seized when the officers initially approached him. Officer Mostek's testimony, which the court found credible, established that he approached Olivarez in a public area, identified himself and requested the opportunity to ask a few questions. Detective Mostek also informed Olivarez that he was free to leave and that he was not under arrest. The officers did not attempt to prevent Olivarez' departure through threats or a show of authority. We believe that, under these circumstances, a reasonable person would believe that he was free to leave. Thus, the initial encounter was consensual. See

*People v. Lynch*, 241 Ill. App. 3d 986, 989, 609 N.E.2d 889 (1993); *People v. Gentile*, 205 Ill. App. 3d 952, 958, 563 N.E.2d 926 (1990); *People v. Price*, 195 Ill. App. 3d 701, 707, 552 N.E.2d 1200 (1990); *People v. Brett*, 122 Ill. App. 3d 191, 195, 460 N.E.2d 876 (1984).

■ Although the initial encounter between Olivarez and the officers was consensual, we must determine whether the search and seizure of Olivarez' bag were justifiable. In *United States v. Place*, 462 U.S. 696, 77 L. Ed. 2d 110, 103 S. Ct. 2637 (1983), the Supreme Court held that the detention of luggage for purposes of investigation must be justified by a reasonable suspicion based on specific articulable facts that the luggage contains contraband. In determining whether a reasonable suspicion exists, the court must consider the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989).

A discussion of several cases will aid in our analysis of this case. In *People v. Boyd*, 215 Ill. App. 3d 894, 576 N.E.2d 116 (1991), the court held the investigatory detention of defendant's luggage was not based on reasonable, articulable suspicion, where the defendant purchased a one-way ticket in cash, boarded the train in a "source" city, occupied a sleeping compartment, appeared nervous, could not produce his ticket, and responded, when interrogated, that his point of origin was Los Angeles even though he had boarded the train in Flagstaff. In that case, when the officer asked the defendant if he could speak with him, the defendant responded "[S]ure." However, when the officer asked whether he could search the defendant's luggage and explained that he could not without the defendant's permission unless he had a search warrant, which he did not have, the defendant stated, "[N]o, you can't search the bag." *Boyd*, 215 Ill. App. 3d at 897. The officers then carried defendant's two suitcases to an office and then commanded the dog to "fetch dope." *Boyd*, 215 Ill. App. 3d at 897. The court wrote: "Although the initial encounter between the defendant and the detectives was consensual [citations], the defendant explicitly refused to consent to any search of his luggage." *Boyd*, 215 Ill. App. 3d at 898. Also, in *Boyd*, the court wrote "[T]hese facts are not necessarily inconsistent and do not necessarily show that the defendant lied about his point of origin." *Boyd*, 215 Ill. App. 3d at 899. The court concluded that the totality of the facts and circumstances did not provide the detectives with a reasonable suspicion that the defendant's luggage contained contraband. *Boyd*, 215 Ill. App. 3d at 900.

Also, in *People v. Breeding*, 219 Ill. App. 3d 590, 579 N.E.2d 1128 (1991), the court held that the detention of the defendant's tote bag was improper because the absence of a train ticket was of no particu-

lar significance as the defendant was at the end of her trip, scanning the crowd when she alighted from the train was not unusual, an individual's gesture of common courtesy of taking the defendant's tote bag was hardly suspicious, nervousness is not uncommon when being followed by two men, the defendant's statement regarding her long trip was not suspicious in light of her two-day cross-country train ride and the context in which the other person pressed his index finger to his lips was susceptible to innocent interpretation. The court placed great importance on the fact that defendant was truthful in answering questions, stating that, "We have found no case which upholds a seizure of luggage solely on the basis of the mannerisms of the defendant which are accompanied by truthful answers or other innocent behavior." *Breeding*, 219 Ill. App. 3d at 601.

The case *sub judice* is similar to *People v. Lynch*, 241 Ill. App. 3d 986, 609 N.E.2d 889 (1993). In *Lynch*, the court found reasonable suspicion justifying a search of defendant's luggage where the defendant looked over his shoulder at least four times and, after he was approached by the officers, he provided a driver's license issued to James Lynch. He did not initially give the officers his ticket, and when he subsequently produced a train ticket issued to Bob Clark, he explained that the ticket was purchased by Bob Clark, but he did not provide any information concerning this individual. *Lynch*, 241 Ill. App. 3d at 991.

The following pertinent factors are part of the totality of the circumstances in the instant case: (1) Olivarez stated that he and his companion, Valencia, were not traveling together, but Valencia stated that they were; (2) Olivarez stated that he had just met Valencia on the train; however, Valencia had Olivarez' ticket; (3) the tickets had Valencia's name on them and Olivarez stated that Valencia had purchased his ticket; and (4) Olivarez exhibited nervous behavior by looking over his shoulder several times. Although the United States Supreme Court has recognized that the fact the defendant has left from a source city is probative, the weight of the evidence that the city is a source city for narcotics is limited. *People v. Stoddard*, 256 Ill. App. 3d 989, 998, 628 N.E.2d 234 (1993). However, even without the characterization that Olivarez fit the "profile," the totality of the circumstances in this case supports the trial court's finding that there was an articulable basis for searching Olivarez' bag.

## II

█ Olivarez next contends that his sentence must be vacated because the trial court sentenced him without a presentence report

and the parties did not agree to the specific sentence imposed. Olivarez bases this contention upon the provisions of section 5—3—1 of the Unified Code of Corrections, which provides:

"A defendant shall not be sentenced for a felony before a written presentence report of investigation is presented to and considered by the court.

However, the court need not order a presentence report of investigation where both parties agree to the imposition of a specific sentence, provided there is a finding made for the record as to the defendant's history of delinquency or criminality, including any previous sentence to a term of probation, periodic imprisonment, conditional discharge, or imprisonment.

The court may order a presentence investigation of any defendant." 730 ILCS 5/5—3—1 (West 1992).

Thus, absent agreement to a sentence by the parties, a defendant shall not be sentenced for a felony before a written presentence report of investigation is presented to and considered by the sentencing court. The mandatory requirement of the report flows from the recognition that its purpose is to inform the sentencing judge of relevant facts about the defendant's background necessary to a sentencing determination. *People v. Youngbey*, 82 Ill. 2d 556, 564, 413 N.E.2d 416 (1980). However, even though the court need not order a presentence report of investigation where both parties agree to the imposition of a specific sentence, the statute provides for a finding to be made for the record as to the defendant's history of delinquency or criminality, including any previous sentence to a term of probation, periodic imprisonment, conditional discharge, or imprisonment. 730 ILCS 5/5—3—1 (West 1992).

We believe that *People v. Evans*, 273 Ill. App. 3d 252, 651 N.E.2d 1143 (1994), is dispositive of this issue. In *Evans*, the parties agreed to the imposition of a specific sentence; however, the trial court based the defendant's sentence on an incomplete record of defendant's criminal history. The appellate court stated that section 5—3—1 must be strictly complied with in establishing defendant's history of criminality and delinquency, including the disposition made of those charges. Because there was an incomplete finding made for the record regarding defendant's criminal history, section 5—3—1 was not strictly complied with and therefore it was necessary to vacate the sentence and remand the case for resentencing. *Evans*, 273 Ill. App. 3d at 256.

■ In the case at bar, Olivarez asserts that the record indicates no evidence of an agreement by both parties of the eight-year sentence that the judge imposed. On the other hand, the State argues

that a Rule 402 (134 Ill. 2d R. 402) conference was held and Olivarez was aware of the sentence he received. Before trial, the following colloquy occurred:

"MR. MULDOON [Assistant State's Attorney]: Judge, this is the case that we had on, a pretrial motion. We're ready for trial today.

MR. FAY [Defendant's Attorney]: Judge, Mr. Olivarez is present, and I would be requesting a 402.

THE COURT: Pass."

The case was then passed and later recalled. When court resumed, the judge admonished Olivarez regarding his right to a jury trial. A jury waiver was executed and testimony was heard from Officer Krok. Following the testimony, the judge found Olivarez guilty and the following colloquy ensued:

"MR. FAY [Defendant's Attorney]: We are ready for sentencing your Honor.

THE COURT: What else do you have to offer, Madam State's Attorney, over and above what I have already been told?

MS. PAGE [Assistant State's Attorney]: Nothing, your Honor.

THE COURT: What do you have to offer in mitigation over and above what I have been told?

MR. FAY: Nothing, your Honor.

THE COURT: Step up. What did I say, eight?

MR. FAY: Yes, sir.

* * *

THE COURT: All right. It is the sentence of this Court that you be taken from the bar of this Court and be remanded to the custody of the officials of the Department of Corrections, State of Illinois, for incarceration in a penal institution in this state for a period of eight years ***."

The State contends that this colloquy indicates that the parties previously agreed on a sentence of eight years. We agree that the record reflects that a Rule 402 conference was held. However, in order for the trial court not to order a presentence investigation report, the parties must not only agree on the specific sentencing recommendation, but strict compliance must also be had regarding section 5—3—1 in establishing defendant's history of criminality and delinquency. Here, the record does not reflect a finding made as to Olivarez' criminal history. Since section 5—3—1 (730 ILCS 5/5—3—1 (West 1992)) specifically sets forth a procedure and the trial court did not comply with the procedure, Olivarez' sentence must be vacated and the cause remanded for a new sentencing hearing.

Because we hold that the sentence must be vacated and the cause remanded for a new hearing, we do not reach the remaining issues raised by the defendant in this case. However, we do here note that

the offense of possession of cannabis with intent to deliver is a lesser offense of cannabis trafficking and that a conviction of a lesser offense cannot stand where the convictions of the greater offense and also of the lesser offense are based on the same physical act. *Lynch*, 241 Ill. App. 3d at 993.

For the reasons cited herein, the judgment of the circuit court of Cook county is affirmed in part, vacated in part and remanded.

Affirmed in part and vacated in part; cause remanded.

McNULTY, P.J., and GORDON, J., concur.