[No. 25661-4-II. Division Two. March 23, 2001.]

McLANE COMPANY, INC., ET AL., *Appellants*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

*George C. Mastrodonato* and *Michael B. King* (of *Lane Powell Spears Lubersky, L.L.P.*), for appellants.

*Christine O. Gregoire, Attorney General,* and *Mary E. Fairhurst, Assistant,* for respondent.

*William C. Severson* and *Norman J. Bruns* on behalf of U.S. Tobacco Sales & Marketing, amicus curiae.

ARMSTRONG, C.J. — Two distributors of tobacco products in Washington State petitioned for a tax refund, challenging the Department of Revenue's interpretation of Washington's "Other Tobacco Products" tax. The tax is imposed upon the sale, use, consumption, handling, or distribution of tobacco products in Washington. RCW 82.26.020(1). The tax is imposed only upon distributors, and one of the statutory definitions of distributor is a person who "brings, or causes

to be brought," tobacco products into Washington for sale. RCW 82.26.010(3). The Department reasons that the two distributors cause the tobacco products to be brought into the State when they place an order with the out-of-state supplier. And because the distributors then handle or distribute the products in Washington, they, according to the Department, are liable for paying the tax. But the distributors contend that their out-of-state suppliers should pay the tax because they still own the tobacco product when it enters the State. Thus, according to the two distributors, the out-of-state sellers bring the product into Washington. The trial court agreed with the Department's interpretation and granted summary judgment in the State's favor. The distributors now appeal. We affirm.

## FACTS

McLane Company, Inc., and Core-Mark International, Inc., distribute groceries, including tobacco products, to retailers in Washington State. Both companies purchase tobacco products from out-of-state tobacco suppliers. These suppliers include United States Tobacco Sales and Marketing, Inc., and Conwood Sales Company LP.

Washington State collects an excise tax on the "sale, use, consumption, handling, or distribution of all tobacco products" in the state. RCW 82.26.020(1). Because the tax applies to tobacco products other than cigarettes, it is known as the "Other Tobacco Products" (OTP) tax. *See* RCW 82.26.010(1). The OTP tax is collected from distributors. RCW 82.26.020(2). One of the statutory definitions of a distributor is a person who "brings, or causes to be brought, into this state from without the state tobacco products for sale. . . ." RCW 82.26.010(3). The question is whether McLane and Core-Mark fit the statutory definition of "distributor."

## ANALYSIS

### I. Statutory Interpretation

 We review a trial court's interpretation of a statute de novo. *Eelbode v. Chec Med. Ctrs., Inc.*, 97 Wn. App. 462, 466, 984 P.2d 436 (1999). When interpreting a statute, this court's fundamental duty is to give effect to the legislature's intent, which we derive primarily from the statutory language. *United States Tobacco Sales & Mktg. Co. v. Dep't of Revenue*, 96 Wn. App. 932, 938, 982 P.2d 652 (1999). We derive the meaning of a plain and unambiguous statute solely from its language. *United States Tobacco*, 96 Wn. App. at 938. "A statute is ambiguous if it is susceptible of two or more reasonable interpretations." *United States Tobacco*, 96 Wn. App. at 938. We have previously held that the OTP tax statute uses plain language, defines key terms, and is not ambiguous. *United States Tobacco*, 96 Wn. App. at 938.

McLane and Core-Mark argue that the phrase "brings, or causes to be brought" applies to the person who owns tobacco products when they enter Washington State. They reason that "[t]he owner of the tobacco products will necessarily transport, or cause or arrange for the transportation . . . of the tobacco products into Washington." Br. of Appellants at 15-16. And they contend that, under the Uniform Commercial Code, title to the tobacco products passes to the buyer when and where the seller delivers the products to the buyer. Under this interpretation, McLane and Core-Mark would never be responsible for paying OTP taxes.

 But the statute does not impose the tax on ownership. Rather, the OTP tax is a tax on the "sale, use, consumption, handling, or distribution of . . . tobacco products." RCW 82.26.020(1). And the person responsible for paying the tax is not identified by ownership. Instead, the tax is imposed upon distributors, defined as:

(a) any person engaged in the business of selling tobacco

products in this state who brings, or causes to be brought, into this state from without the state any tobacco products for sale, (b) any person who makes, manufactures, or fabricates tobacco products in this state for sale in this state, (c) any person engaged in the business of selling tobacco products without this state who ships or transports tobacco products to retailers in this state, to be sold by those retailers[.]

RCW 82.26.010(3). Under subsection (b), a manufacturer presumably would own the tobacco product. Under subsections (a) and (c), however, a person could easily fit the definition of distributor without owning the tobacco product. The plain language of the statute defines the persons liable for the tax on a much broader basis than ownership. We reject McLane and Core-Mark's argument that the tax follows ownership.

McLane and Core-Mark also argue that the Department's interpretation is unconstitutional because the tax is incurred by simply placing a purchase order, citing *Johnson v. Daley*, 403 Ill. 338, 86 N.E.2d 350 (1949). In that case, the Illinois Supreme Court held that a tax on a distributor that "brings or causes to be brought" cigarettes into Illinois violated the Commerce Clause of article I, section 8 of the United States Constitution. *Johnson*, 86 N.E.2d at 353. The court observed that the tax did not apply to the sale or consumption of cigarettes but was "a tax upon the commerce itself." *Johnson*, 86 N.E.2d at 353. States may not impose taxes that discriminate against interstate commerce. *Okla. Tax Comm'n v. Jefferson Lines*, 514 U.S. 175, 197, 115 S. Ct. 1331, 131 L. Ed. 2d 261 (1995).

But the tax is not levied on the purchase order. Although the tax is "imposed at the time" a distributor "brings or causes to be brought" tobacco products into Washington for sale under RCW 82.26.020(2), the taxable event is the "sale, use, consumption, handling, or distribution of . . . tobacco products." RCW 82.26.020(1). These subsections are consistent with each other and with RCW 82.26.010(3), which defines taxpaying distributors. As the Washington Supreme Court has explained, "any wholesaler or any retailer who

brings or causes tobacco products to be brought into the state from an out-of-the-state source becomes liable for the tax when such tobacco products are brought into the state." *Galvin v. Tax Comm'n*, 56 Wn.2d 738, 740, 355 P.2d 362 (1960). Thus, the purchase order is not the taxable event and the tax is not upon commerce itself. We hold that the OTP tax is not an unconstitutional tax against interstate commerce.

McLane and Core-Mark contend that Illinois courts have held that the person who "brings or causes to be brought" is the person who transports cigarettes into that state, citing *O'Leary v. Allphin*, 65 Ill. 2d 268, 357 N.E.2d 491, 2 Ill. Dec. 324 (1976), and *People v. Lynch*, 241 Ill. App. 3d 986, 609 N.E.2d 889, 182 Ill. Dec. 355 (1993). But the *O'Leary* court interpreted a statute requiring a permit to transport cigarettes and imposing criminal liability upon any "transporter" who transports cigarettes unlawfully. *O'Leary*, 357 N.E.2d at 493. And *Lynch* was an appeal from a drug trafficking conviction where the court considered whether the State had presented sufficient evidence to convict the defendant under a statute providing that a person commits a crime when he "brings or causes to be brought" into Illinois more than 2,500 grams of cannabis. *Lynch*, 609 N.E.2d at 893. These cases are inapposite to the tax interpretation issue in this case.

McLane and Core-Mark further argue that we recently held in favor of their position in *United States Tobacco*, 96 Wn. App. 932. In *United States Tobacco*, we considered the proper measure of the OTP tax assessed on tobacco products brought to Washington State by U.S. Tobacco Sales for distribution as samples. *United States Tobacco*, 96 Wn. App. at 934-35, 938 n.11. At issue was the Department's interpretation of the statutory definition of "wholesale sales price" in RCW 82.26.010(7). *United States Tobacco*, 96 Wn. App. at 936-37. We held that the proper measure of the tax on a manufacturer's sale of tobacco products is the fair market value of the products at the time of the manufacturer's sale. *United States Tobacco*, 96 Wn. App. at 941-42.

Under these circumstances, we said that U.S. Tobacco Sales was the taxable distributor under the OTP tax scheme. *United States Tobacco*, 96 Wn. App. at 937-38. But we did not consider the issue of which distributor in an interstate transaction is responsible for paying the OTP tax. In fact, *United States Tobacco* involved a distributor that brought tobacco to Washington on its own accord to distribute as samples, not to sell to in-state distributors. Thus, *United Sales Tobacco* does not answer the question here.

Turning to the statute, the language supports the Department's interpretation. The tax is assessed upon a person "engaged in the business of selling tobacco products in this state who brings, or causes to be brought, into this state from without the state" any tobacco products for sale. RCW 82.26.010(3). Thus, only persons who are *engaged in the business* of selling tobacco products in Washington qualify as distributors. And such persons must bring or cause the products to be brought into Washington *for sale*. Out-of-state suppliers such as U.S. Tobacco Sales and Conwood may or may not be engaged in the business of selling tobacco products in Washington when they sell to in-state distributors. If they are not, then neither they nor the in-state distributors would be liable for the tax. But the legislature has clearly said that all tobacco products brought into Washington are to be taxed. RCW 82-.26.020(1).

Further, out-of-state suppliers would fit the definition of "distributor" only if the sale for which they bring the products into the state is a sale to an in-state distributor. But the language suggests that the "sale" contemplated is a further sale in Washington by the in-state distributors. For example, under McLane and Core-Mark's interpretation, a sale to an in-state distributor who did not intend to resell the product in Washington would still be taxable to the out-of-state suppliers. But the tax would then be imposed on goods simply passing through Washington and would be subject to a Commerce Clause challenge. *See Jefferson Lines*, 514 U.S. at 197. This pitfall would be avoided if the

bringing or causing to be brought for sale language refers to a later general distribution sale in Washington. And this interpretation fits the in-state distributors, not the out-of-state suppliers. We conclude that both the "in the business of selling" language and the bringing "for sale" language strongly point to the in-state distributors as the persons liable for the tax.

■ McLane and Core-Mark also argue that the Department's long-standing interpretation is based on circumstances that have changed. The Department responds that it is not asking the court for deference to its interpretation. The Department is correct, as deference to the Department's interpretation would be inappropriate in this case. This court defers to an agency's interpretation only when statutory language is ambiguous. *United States Tobacco*, 96 Wn. App. at 938 n.12. This court's interpretation of the OTP tax depends on legislative intent as derived from the language of the statute, not the Department's past interpretation.

■■ Finally, McLane and Core-Mark also allege that the Department's sole goal is to maximize its revenue base. McLane and Core-Mark explain that if the out-of-state suppliers are liable for the tax, the tax will be assessed on the sale price from the manufacturer to the out-of-state supplier. If the in-state distributors are liable, the Department will assess the tax on the price paid by the in-state distributors to the out-of-state suppliers—a higher price than what the out-of-state suppliers pay the manufacturer. Moreover, according to McLane and Core-Mark, they do not know what the out-of-state supplier pays to the manufacturer. Yet, they must pay the tax when the product is delivered to them in Washington. This problem, according to McLane and Core-Mark, is avoided if the out-of-state supplier is the taxpayer. But this analysis ignores *United States Tobacco*, where we held that the statute sets the amount of the tax at the fair market price of the product when the manufacturer sells to a distributor. *United States Tobacco*, 96 Wn. App. at 941. Neither this court nor the

Department can ignore this plain language even though it may be difficult to determine the amount to be taxed. Furthermore, the Department concedes that the sale price from the out-of-state suppliers to the in-state distributors does not set the measure of the tax. Rather, it is *evidence* only of the manufacturer's fair market price.

We hold that under the plain language of the statutes, an in-state distributor is a person engaged in the business of selling tobacco products in Washington whose tobacco products are to be brought into the state for sale. Accordingly, McLane and Core-Mark are responsible for paying the OTP tax, and the trial court did not err by granting summary judgment in the Department's favor.

## II. Discovery

McLane and Core-Mark argue that, even if the trial court did not err in interpreting the OTP tax statute, we should remand the case to allow further discovery. They allege that the Department withheld information about its historical administration and interpretation of the OTP tax that it eventually relied upon in an affidavit submitted to support its motion for summary judgment. The Department concedes that it entered a "period of confusion" during which it collected the tax from out-of-state distributors. Br. of Resp't at 43. But the Department does not argue on appeal that we should defer to its historical interpretation of the OTP tax statute. Furthermore, McLane and Core-Mark never moved to compel discovery of this information. And although the challenged affidavit referred to the Department's "longstanding interpretation" of the OTP tax statute, the affidavit relies on information available to the public: a letter sent to the tobacco industry and a published determination the Department issued. We conclude that even if the Department wrongly withheld discoverable

information, the information would not change the result here, which is based upon the wording of the statutes.

Affirmed.

BRIDGEWATER and HUNT, JJ., concur.

Reconsideration denied May 18, 2001.

Review denied at 145 Wn.2d 1005 (2001).